COLEMAN, APPELLEE, *v.* EXCELLO-TEXTRON CORPORATION, APPELLANT.

(No. CA88-07-097—Decided July 10, 1989.)

*Casper & Casper* and *Arthur B. Casper,* for appellee.

*McCaslin, Imbus & McCaslin Co., L.P.A.,* and *Philip J. Marsick,* for appellant.

YOUNG, P.J. On January 27, 1986, plaintiff-appellee, Stuart Rockne Coleman, was injured while operating a grinding machine manufactured by defendant-appellant, Excello-Textron Corporation. Excello is now the successor corporation of Micro-Matic Hone Corporation, which originally manufactured and sold the Model 844-1 flat lap machine to Coleman's employer, Ford Motor Company in Sharonville, Ohio, on June 4, 1956.

The flat lap machine is used for the purpose of grinding to a specified flatness or tolerance various transmission parts. The machine consists of a horizontal grinding wheel which rotates in a counterclockwise fashion. Above the grinding wheel is a carousel-type carrier which holds the transmission parts in place on the surface of the grinding wheel while it oscillates and rotates in a clockwise direction.

As the grinding wheel becomes uneven, it is necessary for the operator

to hone the surface of the wheel. This is accomplished by either utilizing the "automatic dresser" supplied with the machine or "honing by hand" with a jagged stone. While honing the grinding wheel, the "parts carrier" remains in place above the wheel. In order to ensure that this "parts carrier" does not fall in the course of honing the wheel, the operator will either move the carrier to one side or make sure the safety latches are properly set in place.

Coleman, in order to perform the "honing procedure," moved the parts carrier approximately four inches to the side. The ratchet as well as all safety locks were set by Coleman. However, due to worn ratchet and latches, the "parts carrier" nevertheless fell on Coleman's hand while in the process of honing, thereby pinning his hand against the wheel resulting in the amputation of three fingertips on Coleman's right hand.

Coleman filed suit against Excello under strict products liability, breach of warranties, and negligence, seeking damages of $849,000. At the close of Coleman's case-in-chief and after the presentation of all evidence, Excello moved for a directed verdict, which was denied by the trial court.

The jury returned a general verdict for the amount of $80,000 in favor of Coleman, accompanied by twelve answered interrogatories. The jury further found that Coleman was ten percent negligent under the negligence theory of recovery, thereby reducing that award to $72,000. The court subsequently entered judgment in the sum of $80,000 on June 7, 1988, even though inconsistencies abound between the jury's general verdict and the answered interrogatories.

Excello has filed a timely notice of appeal setting forth the following assignments of error:

Assignment of Error No. 1:

"The general verdict in favor of plaintiff-appellee accompanied by the juries [sic] findings that the appellant's lap-grinder was defectively designed which was a proximate cause of the injuries is contrary to law."

Assignment of Error No. 2:

"The trial court erred when it charged the jury on the issue of 'warning' under the theory of strict liability."

Assignment of Error No. 3:

"The trial court erred when, over objection, it permitted the plaintiff's expert, Gerald Rennell, to identify a 1955 publication depicting a lap-grinder manufactured by Micro Matic as not demonstrating any appearance of a warning. The trial court further erred when it admitted said publication into evidence over objection."

Assignment of Error No. 4:

"The trial court erred by overruling appellant's motion for a directed verdict after the plaintiff rested and after the presentation of all the evidence."

Assignment of Error No. 5:

"The verdict in favor of the plaintiff against appellant was manifestly against the weight of the evidence."

Assignment of Error No. 6:

"The trial court erred when, over objection, the plaintiff's expert, Gerald Rennell, was permitted [to] render an opinion that the appellant could have anticipated the conduct of the plaintiff."

I

The first and second assignments of error will be hereinafter discussed as one since the issues presented in the respective assignments of error are interrelated. In essence, Excello argues in each of these assignments of error that, as a matter of law, the jury improperly found it strictly liable for Coleman's injuries solely based on a "failure to warn." We agree.

A

Excello insists that the general

verdict and jury interrogatories are inconsistent regarding the existence of a design defect in the lap grinder machine.

Civ. R. 49(B) delineates the use of jury interrogatories by a trial court. It provides in part:

"When the general verdict and the answers are consistent, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When one or more of the answers is inconsistent with the general verdict, *judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial.*" (Emphasis added.)

The trial court in this instance failed to reconcile the apparent inconsistencies in the general verdict and jury interrogatories Nos. 3 and 4 pursuant to Civ. R. 49(B). The court's misconception of product liability law pertaining to the use of a "warning" and what actually constitutes a "defective product" allowed the jury's inconsistencies to remain unabated.

The established rule in Ohio is that interrogatories are used for the purpose of testing the correctness of a general verdict thereby enabling the court to determine as a matter of law whether such verdict will stand. *Cincinnati Riverfront Coliseum, Inc.* v. *McNulty Co.* (1986), 28 Ohio St. 3d 333, 28 OBR 400, 504 N.E. 2d 415; *Davison* v. *Flowers* (1930), 123 Ohio St. 89, 174 N.E. 137.

The general verdict rendered by the jury in favor of Coleman is based in large part on an alleged "design defect" in the lap grinder. However, as Excello indicated, the jury made the following findings reflected in the interrogatories:

"(1) Was the lap-grinder as manufactured and sold by defendant, defectively designed?

"Yes.

"(2) If your answer to the foregoing Interrogatory (1) was yes, was the defective design of the lapgrinder a proximate cause of plaintiff's injuries?

"Yes.

"(3) If your answer to Interrogatory (1) was 'yes,' does the defective condition exist by reason that the benefits of the design of the lapgrinder do not outweigh the risk inherent in such design?

"No.

"(4) If your answer to #1 was 'yes,' does the defective condition exist by reason that the product failed to perform as safely as an ordinary consumer would expect when used in its intended or foreseeable manner?

"No.

"(5) If your answer to question #1 was 'yes' in what respect was the lapgrinder defective?

"1) More effective safety devices.
"2) Ease of operation.
"3) Posted Warning Signs."

Jury interrogatories Nos. 3 and 4 clearly contradict interrogatory No. 1 and the general verdict since the latter concludes that Excello is strictly liable for manufacturing and selling a "defective" product. Further, the test enunciated by the Ohio Supreme Court in *Knitz* v. *Minster Machine Co.* (1982), 69 Ohio St. 2d 460, 23 O.O. 3d 403, 432 N.E. 2d 814, for determining a "defective design" has not been met by Coleman in this case due to the fact that the jury in interrogatories Nos. 3 and 4 answered the defective design issue in the negative in favor of Excello.

It is incumbent upon a party challenging a general verdict to show that the special findings, when considered together, are inconsistent and irreconcilable with the general verdict. *Prendergast* v. *Ginsburg* (1928), 119 Ohio St. 360, 164 N.E. 345, paragraph

one of the syllabus; *Hogan* v. *Finch* (1966), 8 Ohio St. 2d 31, 37 O.O. 2d 379, 222 N.E. 2d 633. In the case at bar, Excello has shown with vigor that the general verdict is indeed inconsistent with the findings of the jury in interrogatories three and four, since the standard for finding a product "defective" has not been met. Therefore, an analysis of Ohio products liability law must hereinafter be addressed.

### B

Excello asserts in its first assignment of error that the jury's finding of a "defective design" which proximately resulted in Coleman's injuries is contrary to law.

It is a well-established rule of Ohio products liability law that in order for a party to recover based upon strict liability in tort, the plaintiff must prove by a preponderance of the evidence that: (1) there was a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss. *State Auto. Mut. Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151, 65 O.O. 2d 374, 304 N.E. 2d 891; *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267.

The seminal case in this area of Ohio law is *Temple, supra.* In that case, the Ohio Supreme Court formally adopted 2 Restatement of the Law 2d, Torts (1965) 347, Section 402A and the comments thereto, thereby providing a cause of action in *strict liability* for injury from a "defective" product. Section 402A provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Although the *Temple* decision set forth the availability of a strict liability cause of action for a "defective product," the court failed to outline the standard for finding such a product "defective." Therefore, *Temple, supra,* does not provide a legal standard for the application of strict liability in tort to design defects. *Knitz, supra,* at 464, 23 O.O. 3d at 407, 432 N.E. 2d at 819.

The court subsequently in *Knitz, supra,* established a two-prong test for determining whether a product design is in a defective condition: under one prong, the design is in a defective condition when the product fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Under the second prong, the design is in a defective condition if the risk inherent in the design outweighs its benefits.

The first prong of the test is essentially a consumer expectation test. The defendant will be liable if the plaintiff establishes that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. *Cremeans* v. *International Harvester Co.* (1983), 6 Ohio St. 3d 232,

6 OBR 302, 452 N.E. 2d 1281; *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456, 21 O.O. 3d 285, 424 N.E. 2d 568.

Under the second prong of the test, the defendant will be liable if the plaintiff establishes that the risk inherent in the design outweighs its benefits. Factors deemed relevant but not exclusive to this inquiry include: (1) the likelihood that the product design will cause injury, (2) the gravity of the harm, and (3) the mechanical and economic feasibility of an improved design. *Knitz, supra,* at 466, 23 O.O. 3d at 411, 432 N.E. 2d at 820.

Applying the foregoing standards to the case *sub judice,* this court concludes that the lap grinder performed as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner. Coleman was aware that injury could occur if the parts carrier was not properly secured and placed out of the way of the grinding wheel. Further, Coleman failed to use the automatic dresser supplied with the lap grinder, instead opting to remove uneven spots from the grinding wheel by hand. Thus, the court is not presented with a product that contains unknown dangers; the inherent danger of hand-honing the grinding wheel without placing the parts carrier "out of harm's way" was well-known to Coleman and other Ford Motor Company employees.

In addition, the risk-analysis prong of the "defective design" standard indicates that in this instance the benefits of the design of the lap grinder are not outweighed by the risk inherent in such design. The lap grinder in question had not been the subject of an accident or injury in the past ten years and, further, Coleman

had operated the machine without incident for a period of thirteen months. In any event, Coleman has failed to set forth specific facts showing that inherent risks outweighed the benefits.

Thus, the negative response of the jury in connection with the "defective design" two-prong analysis compels this court to reverse the lower court's judgment on Coleman's strict liability claim. In interrogatories Nos. 3 and 4, the jury essentially made a finding that the product in question was not "defective." Although Coleman points to the jury's response in interrogatory No. 5,[1] these items are questions concerning negligence or the proper standard of care and, therefore, do not justify the imposition of strict products liability.

The tests employed to determine whether a product is "defective" are not grounded in negligence, but, rather, the standards are calculated to guard consumers from defective products by holding manufacturers and sellers strictly liable. The focus of a products liability case is on the product and the nature of the defect, not on the conduct of the manufacturer. Therefore, the alleged requirement that a defect be unreasonably dangerous is not part of the analysis. *Cremeans, supra.*

Therefore, as stated by the Ohio Supreme Court in *Bowling* v. *Heil Co.* (1987), 31 Ohio St. 3d 277, 282, 31 OBR 559, 563, 511 N.E. 2d 373, 377:

"* * * [A] separate body of products liability law has evolved in Ohio, apart from the laws of contracts and negligence. Further, it is apparent that the negligence concept of ordinary care is not a part of the products liability doctrine, which is governed instead by the distinct principles of strict

---

[1] "(5) If your answer to question #1 was 'yes' in what respect was the lap-grinder defective?

"1) More effective safety devices.
"2) Ease of operation.
"3) Posted Warning Signs."

liability in tort. These principles require liability even where a manufacturer has exercised 'all possible care.' *Temple, supra.*"

Accordingly, Excello's first assignment of error is well-taken, requiring the reversal of strict liability due to the failure of Coleman to prove a design defect in the lap grinder.

## C

Excello in its second assignment of error relies on the products liability analysis advanced in the previous section to assert that the court improperly charged the jury on the issue of "warning" in the context of strict liability.

The court charged the jury as follows:

"A produce [*sic*] may be perfectly manufactured and meet every requirement for its design purpose and still be defective through failure to warn of its dangerous characteristics."

Coleman appears to suggest that a lack of warning on the lap grinder constitutes a "defect." However, Ohio case law indicates that a strict liability cause of action for failure to warn is not recognized. *Overbee* v. *Van Waters & Rogers Co.* (C.A. 6, 1983), 706 F. 2d 768; *Hardiman* v. *Zep Mfg. Co.* (1984), 14 Ohio App. 3d 222, 14 OBR 250, 470 N.E. 2d 941.

In *Temple, supra,* at 325, 4 O.O. 3d at 470-471, 364 N.E. 2d at 272-273, the court stated:

"* * * [T]he rule imposing obligation on the manufacturer or seller to give suitable warning of a dangerous propensity of a product is a rule fixing a standard of care and any tort resulting from the failure to meet this duty is, in essence, a *negligent act.* * * *" (Emphasis added.)

Moreover, in *Leichtamer, supra,* at 469, 21 O.O. 3d at 293, 424 N.E. 2d at 578, the court held:

"* * * The absence of a warning does not, without more, provide a basis for [strict] liability; rather, evidence of warning is in the nature of an affirmative defense to a claim that a product is unreasonably dangerous. * * *" See, also, *Knitz, supra,* at 466, 23 O.O. 3d at 407, 432 N.E. 2d at 818, fn. 5.

Therefore, the court's instruction regarding the use of a "warning" in a strict liability context was not proper, since a claim of "failure to warn" must be analyzed using negligence principles. Excello's second assignment of error is well-taken.

## D

Even though the court below improperly held Excello strictly liable in tort for Coleman's injuries, Excello is nevertheless accountable in negligence for the injuries sustained by Coleman.

It is rudimentary negligence law that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty and an injury resulting proximately therefrom. *Menifee* v. *Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 181, 472 N.E. 2d 707, 710; *Feldman* v. *Howard* (1967), 10 Ohio St. 2d 189, 39 O.O. 2d 228, 226 N.E. 2d 564. Further, the existence of such a duty depends on the foreseeability of the alleged injury. *Ford Motor Co.* v. *Tomlinson* (C.A. 6, 1956), 229 F. 2d 873; *Gedeon* v. *East Ohio Gas Co.* (1934), 128 Ohio St. 335, 190 N.E. 924.

A manufacturer is under a duty to use reasonable care to design his product so as to make it safe for its intended use, but not accident-proof or foolproof. *Temple, supra,* at 326, 4 O.O. 3d at 471, 364 N.E. 2d at 273; *Gossett* v. *Chrysler Corp.* (C.A. 6, 1966), 359 F. 2d 84, 87. In connection with such duty, the manufacturer has a duty to warn the user of any dangerous propensity in the use of the product of which it knew or should have known in such a way that if the warning was followed, the product would be safe. *White* v. *Dealers Transit, Inc.* (1980), 4

Ohio App. 3d 40, 45, 4 OBR 87, 92, 446 N.E. 2d 460, 466.

The question of a particular defendant's negligence is for the jury to determine from the evidence adduced at trial, under proper instruction from the court. *Di Gildo* v. *Caponi* (1969), 18 Ohio St. 2d 125, 47 O.O. 2d 282, 247 N.E. 2d 732. In the case *sub judice,* the jury found Excello negligent in its design of the lap grinder and for failing to warn of inherent dangers.[2] Therefore, since issues affecting the determination of negligent conduct are for the jury to decide, we hold that the judgment rendered by the lower court pursuant to the verdict of the jury is proper and based on competent, credible evidence, rendering Excello liable to the extent of ninety percent of the $80,000 judgment.

## II

Excello, in its third and sixth assignments of error, takes issue with the trial court's admission of certain evidence pertaining to the appearance of a warning on the lap grinder and the foreseeability of injury.

At trial, Coleman's expert, Gerald Rennell, was permitted, over objection, to identify a 1955 sales publication of a lap grinder manufactured by Micro Matic Corporation ("successor-in-interest" being Excello) which failed to have the appearance of a "warning" label. Excello asserts that depicting a 1955 model grinder without a "warning" label is not relevant to show that a 1956 model is in conformity with the prior version.

Evid. R. 401 states:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of conse-

quence to the determination of the action more probable or less probable than it would be without the evidence."

However, this elementary rule of evidence admission is slightly limited by Evid. R. 403(A), as follows:

"Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

In the case *sub judice,* Excello has admitted that a "warning" did not exist on the lap grinder at the time of Coleman's accident. Further, there was no evidence presented by Excello to indicate that a "warning" was in fact posted on the machine at the time of manufacture. Therefore, Excello's contention that the lower court abused its discretion upon admitting the 1955 lap grinder sales brochure into evidence does not have merit.

The admission and exclusion of relevant evidence is a matter left to the sound discretion of the trial court requiring an appellate court to forgo interference absent a showing of abuse of discretion and material prejudice. *State* v. *Sage* (1987), 31 Ohio St. 3d 173, 31 OBR 375, 510 N.E. 2d 343, paragraph two of the syllabus; *State* v. *Withers* (1975), 44 Ohio St. 2d 53, 73 O.O. 2d 280, 337 N.E. 2d 780. The instant action concerns the admission of relevant evidence, especially since Excello failed to produce evidence to indicate the existence of a product warning at the time of manufacture. Allowing the 1955 sales brochure regarding the lap grinder into evidence was clearly probative of the "warning" issue

---

[2] "(6) Was the defendant Excello-Textron Corp. negligent?

"Yes.

"* * *

"(8) If your answer to question #6 is 'yes,' in what respect was defendant negligent?

"1) More effective safety devices.

"2) Ease of Operation.

"3) Posted Warning Signs."

and did not prejudice the rights of Excello in any manner.

Excello's argument in this assignment of error is akin to the weight or credibility of evidence rather than its admissibility. Therefore, since the jury is the arbitrator of factual questions and disputes, the complained-of evidence was properly admitted for the jury to weigh. Excello's third assignment of error is not well-taken.

Excello further contends that testimony elicited from Coleman's expert, who opined that Excello could have anticipated the conduct of Coleman, was improper since this opinion was not based on any underlying facts or data.

Evid. R. 702 provides that:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Therefore, in order for expert testimony to be properly admissible, the testimony must satisfy two requirements: the witness must be qualified as an expert by the trial court and the testimony must be such that it is helpful to the trier of fact for purposes of understanding other evidence or determination of a fact in issue.

The determination as to whether a given witness is qualified to testify as an expert witness is a matter relegated to the sound discretion of the trial court. *State* v. *Maupin* (1975), 42 Ohio St. 2d 473, 71 O.O. 2d 485, 330 N.E. 2d 708. Once the court determines that a witness is so qualified, the decision is not subject to reversal on appeal unless an abuse of discretion is demonstrated. *Id.*

The record before us indicates that Rennell became involved in equipment safety in 1969, when employed by General Motors Corporation. Rennell

was trained by General Motors and worked as a safety examiner for three years. Subsequent to his employment at General Motors, Rennell has been a safety consultant since 1972. In addition, Rennell has investigated several thousand workplace accidents, as well as published an article on "crane" design. These qualifications appear to us to be sufficient to support the trial court's finding that Rennell was qualified to testify as an expert in the area of workplace safety and equipment design.

The determination as to whether a given subject is a proper matter for expert testimony turns on whether the testimony will "* * * assist the trier of fact to understand the evidence or to determine a fact in issue * * *." Evid. R. 702. The Ohio Supreme Court has held that expert testimony is admissible at trial: (1) where the evidence is relevant and material to the issue in the case; (2) where the subject of the expert testimony is not within the understanding of the jury; (3) where the theory relied upon by the expert is commonly accepted in the scientific community; and (4) its probative value outweighs its prejudicial impact. See *State* v. *Thomas* (1981), 66 Ohio St. 2d 518, 20 O.O. 3d 424, 423 N.E. 2d 137; *State* v. *Garfield* (1986), 34 Ohio App. 3d 300, 518 N.E. 2d 568.

The subject of the expert testimony at issue herein was an opinion concerning the foreseeability of an injury arising from the subject lap grinder machine. In this case, Rennell's opinion concerning foreseeability was both relevant and material to the issue of negligence and was not within the general understanding of the lay juror. Excello was not prejudiced in any manner by the testimony of Rennell since the jury could believe or disbelieve the expert opinion as it saw fit. This expert did not infringe on the fact-finding function of the jury, but, instead, merely aided the process by

the introduction of probative evidence concerning equipment safety and design. Further, Excello fully cross-examined Rennell concerning the subject testimony, thereby leaving the factual dispute in the hands of the jury.

Excello complains that Rennell was permitted to testify without the disclosure of underlying facts as to the conduct of Coleman. However, Rennell testified that he personally investigated and observed the lap grinder machine used by Coleman. Clearly, the court below had before it sufficient data concerning the conduct of Coleman and the operation of the lap grinder for expert Rennell to form and give an opinion as to any foreseeable conduct. See Evid. R. 704 and 705.

For these reasons, Excello's sixth assignment of error is not well-taken.

### III

Excello in its fourth assignment of error argues that the trial court should have granted its motion to direct the verdict against Coleman.

Civ. R. 50(A)(4) provides that:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

The law in Ohio regarding directed verdicts is well-established. A motion for a directed verdict does not present a question of fact, but instead presents a question of law, even though in deciding such motion it is necessary to review and consider the evidence. *Ruta* v. *Breckenridge-Remy Co.* (1982), 69 Ohio St. 2d 66, 23 O.O. 3d 115, 430 N.E. 2d 935, paragraph one of the

syllabus; *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 284, 21 O.O. 3d 177, 179, 423 N.E. 2d 467, 470.

Civ. R. 50(A)(4) only requires this court to determine whether there exists any evidence of probative value in support of the party's claim. On a motion for a directed verdict, the *materiality*, as opposed to conclusions drawn from the evidence, is subject to review since such a motion presents only a question of law.

The Ohio Supreme Court in *Ruta, supra,* at 68, 23 O.O. 3d at 116, 430 N.E. 2d at 937, stated as follows:

"When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence. * * *"

Therefore, when hearing a motion to direct a verdict, a court must only determine whether the non-moving party has presented sufficient evidence to allow the jury to have a case. Inferences and conclusions from such evidence are left for the trier of fact, thereby requiring the court to merely decide the materiality of evidence in connection with the question of law presented.

In the instant case, Coleman presented sufficient direct and circumstantial evidence of a "defective" design, negligent design and negligent failure to warn of possible dangers. Clearly, the case was properly given to the jury in order to resolve both the "defective" product and "breach of due care" theories of recovery. Thus, Excello's motion for a directed verdict

was properly overruled by the trial court after Coleman rested, as well as at the conclusion of all the evidence.

## IV

Excello asserts in its fifth assignment of error that the jury's verdict is manifestly against the weight of the evidence. Although phrased in different terms, Excello's argument is essentially identical to the preceding discussion in Part III.

An appellate court sitting as an intermediate court of review must properly give deference to the findings of the trier of fact. The underlying rationale is that a trier of fact is best able to review the witnesses and use those observations in weighing the credibility of proffered testimony. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80, 10 OBR 408, 411, 461 N.E. 2d 1273, 1275.

The standard utilized in assessing error based on the manifest weight of the evidence is set forth as follows:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, syllabus; *Seasons Coal Co., supra.*

We are of the opinion that the verdict of the jury consists of competent and credible evidence elicited at trial from an expert witness well versed in product safety and design, as well as other witnesses in connection with the history and use of the particular machine in question. Accordingly, Excello's fifth assignment of error is not well-taken since the jury's verdict is based on adequate, competent evidence available at trial.

## V

For the foregoing reasons, the first and second assignments of error are well-taken requiring reversal of the jury's verdict and lower court judgment in strict liability against Excello. However, Excello's liability in negligence due to both inadequate "design" and "failure to warn" is affirmed thereby fixing judgment against Excello in the amount of $72,000.

Further, Excello's assignments of error three, four, five and six are hereby overruled, consistent with this opinion.

*Judgment affirmed in part
and reversed in part.*

KOEHLER, J., concurs.

HENDRICKSON, J., concurs in part and dissents in part.

HENDRICKSON, J., concurring in part and dissenting in part. I agree with the majority that Excello's first and second assignments of error are well-taken. Furthermore, I agree that there is no merit to Excello's third and sixth assignments of error. However, I do not agree that Excello's fourth and fifth assignments of error are without merit.

Excello provided an "automatic dresser" for use in honing the surface of the grinding wheel. Coleman chose not to use the "automatic dresser." Instead, he chose to hone the surface of the grinding wheel by hand at which time the rachet and latches holding the parts carrier in place, being worn, failed, resulting in injury to Coleman.

Under such circumstances, where is there negligence on the part of Excello? Excello did not have the responsibility for the maintenance of the machine. That responsibility is, instead, upon the owner of the machine, *i.e.*, Coleman's employer. Thus, the negligence which resulted in Coleman's injury was not that of Excello.

After all, in the absence of evidence that the manufacturer of a machine used substandard or improper materials in the machine, ordinary wear and tear is not a design defect or a manufacturing defect. It is, instead, the result of improper maintenance of the machine, or improper instruction as to the manner of honing the grinding wheel, or both. In such a case, the negligence, if any, is that of the owner of the machine, which is Coleman's employer.

Therefore, the trial court erred in overruling appellant's motion for a directed verdict. Furthermore, the verdict is against the manifest weight of the evidence. Consequently, Excello's fourth and fifth assignments of error are well-taken and should be sustained. Thus, the judgment should be reversed and final judgment should be entered for Excello.