**BURROWS, Appellant and Cross–Appellee,**

v.

**FASTENER ENGINEERS, INC., Appellee and Cross–Appellant, et al.**

[Cite as *Burrows v. Fastener Engineers, Inc.* (1992), 78 Ohio App.3d 388.]

Court of Appeals of Ohio,
Montgomery County.

No. 13038.

Decided Feb. 28, 1992.

*David M. Deutsch* and *Arthur A. Ames,* for appellant and cross-appellee.

*Stephen V. Freeze* and *Gregory J. Berberich,* for appellee and cross-appellant.

*Thomas Whelley II* and *Harry A. Hanna,* for defendant Parker–Hannifin Corporation.

BROGAN, Judge.

The appellant, Patrick Burrows, appeals from the judgment of the Common Pleas Court of Montgomery County granting summary judgment in favor of the appellee, Fastener Engineers, Inc.

This products liability action began in April 1988, when Burrows, an employee of Parker–Hannifin Corp. ("Parker"), was injured when his gloved hand was caught and pulled into the unguarded feed rolls of a combination coil shear/pre-feeder/uncoiler machine. The accident resulted in the "amputation of [his] thumb and longer finger, extension tendon laceration of [*sic*] little finger and fracture of the middle phalanx." The machine, manufactured by appellee, Fastener Engineers, Inc. ("Fastener"), was purchased in December of 1980 by Parker.

On March 30, 1990, Burrows filed a complaint in strict liability against Parker and Fastener, which asserted, *inter alia,* that Fastener failed to provide adequate warnings of the machine's dangers and failed to test the machine under all foreseeable conditions before its distribution and sale, that the machine was more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, that the removeability of the machine's safety guard and its failure to be interlocked and interfaced into machine operation by means of a limit switch or other procedure constituted a design defect, and that his injuries were a direct and proximate result of Fastener's negligence. The Burrows' complaint also stated that the safety guard incorporated in the design of the machine had been removed by Parker.

In February of 1991, Fastener filed a motion for summary judgment which was granted on May 14, 1991 and the trial court held Fastener was not liable for Burrows' injuries because Parker's removal of the guard was a substantial alteration of the machine. Burrows filed a motion for reconsideration in late May 1991 and a Civ.R. 60(B) motion for relief from judgment on June 7, 1991. Burrows filed a notice of appeal from the summary judgment on June 10, 1991. On August 21, 1991 the trial court overruled Burrows' motion for relief from the judgment and Burrows filed a separate notice of appeal from that judgment on September 10, 1991.

Burrows asserts in his sole assignment of error that the trial court erred by its ruling that there remained no genuine issues of material fact concerning a substantial alteration to the machinery in question. Fastener cross-appealed, asserting that the trial court erred in concluding a genuine issue of material fact existed as to whether Fastener was a "mere continuation" of the corporation that manufactured the subject machine.

In Ohio, products liability law began with *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, where the Ohio Supreme Court adopted 2 Restatement of the Law 2d, Torts (1965) 347, Section 402A. As summarized in *Cox v. Oliver Machinery Co.* (1987), 41 Ohio App.3d 28, 30, 31, 534 N.E.2d 855, 858, 859, this section states that:

" * * * one who manufactures or sells a product in a defective condition is subject to liability for physical harm caused to the ultimate user * * * if the product is expected to and does reach the user * * * without substantial change in the condition in which it is sold."

The court in *Cox* went on to say that:

" * * * a substantial alteration subsequent to the manufacture and sale of the product will relieve the defendant-manufacturer from liability and will support summary judgment in favor of the manufacturer. * * * Summary judgment for the manufacturer is also appropriate where the product is used in a capacity which is unforeseeable by the manufacturer and completely incompatible with the product's design." *Id.* at 30–31, 534 N.E.2d at 858–859.

While in *Temple* the court set forth the availability of a strict liability cause of action for a defective product, it did not provide a legal standard for the application of strict liability in tort to design defects. *Coleman v. Excello–Textron Corp.* (1989), 60 Ohio App.3d 32, 572 N.E.2d 856. This issue was resolved in *Knitz v. Minster Machine Co.* (1982), 69 Ohio St.2d 460, 23 O.O.3d 403, 432 N.E.2d 814, where a two-prong test was established for determining the condition of a product. Pursuant to this test, a product design is in a defective condition to a user or consumer if:

"(1) it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if the benefits of the challenged design do not outweigh the risk inherent in such design." *Id.* at 466, 23 O.O.3d at 406, 432 N.E.2d at 818.

 Foreseeability is determined by applying the test of "whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 180, 472 N.E.2d 707, 710. However, the design of a product cannot be held to be defective or unreasonably dangerous under Section 402A of the Restatement of Torts 2d unless the product is being used in an intended or reasonably foreseeable manner. *Id.* at 78, 15 OBR at 181, 472 N.E.2d at 710. Furthermore,

" * * * only those circumstances which [the manufacturer] perceived, or should have perceived, at the time of [its] respective actions should be considered."

" * * * [A] manufacturer need not anticipate all uses to which its product may be put, nor guarantee that the product is incapable of causing injury in all of its possible uses." *Id.* at 77 and 78, 15 OBR at 180 and 181, 472 N.E.2d at 710 and 711.

Thus, while a manufacturer must design his product using reasonable care so as to make it safe for its intended use, he is not under a duty to render it accident proof or foolproof. *Coleman, supra,* 60 Ohio App.3d at 37, 572 N.E.2d at 862.

 Burrows' assignment of error inherently involves the resolution of two issues: (1) whether the machine contained an inherent design defect, and (2) if the removal of the guard was foreseeable by the manufacturer.

In support of his argument, Burrows relies on *Cox, supra,* 41 Ohio App.3d at 28, 534 N.E.2d at 855. The appellee in *Cox* was injured while operating an industrial saw manufactured by Oliver Machine Co. ("Oliver"). Oliver argued that they were absolved from liability because the appellee's employer, Magnode Products, Inc., had made substantial alterations to the machine. Expert testimony was presented that the lack of adequate and sufficient guards contributed to the appellee's injuries because it was foreseeable that he would place his hands into the saw's danger zone. *Id.* at 33, 534 N.E.2d at 860. The court found that reasonable minds could reach different conclusions as to the existence of a design defect and whether such defect caused the appellee's injuries. *Id.*

Burrows argues that in *Cox* the mere fact that the employer was allowed to perform maintenance on the machine, and remove the guards to perform such maintenance, was insufficient to relieve the manufacturer of liability. Therefore, Burrows contends that because the removal of guards was also necessary in the daily operation of the machines in the instant case, its removal and the failure to replace it was foreseeable by the manufacturer and thus constituted a design defect. We do not agree.

*Cox* is distinguishable from the instant case in several respects. First, the expert testimony in *Cox* established that certain guards were both available and economically feasible at the time of the saw's manufacture and that such guards would have been more effective in avoiding injury than those Oliver actually installed. *Id.* at 31, 534 N.E.2d at 859. Second, testimony showed that the saw as manufactured was considered to be more dangerous than the ordinary consumer would expect when normally used and that the risks outweighed the benefits. *Id.* Third, the expert testified that the saw's design was defective because it lacked adequate point-of-operation guards; the issue of the lack of these guards was sufficient to raise a question of the existence of a design defect under the *Knitz* test. *Id.* at 33, 534 N.E.2d at 860.

In *Cox*, experts testified that the saw was manufactured without appropriate safety guards; and whether this constituted a design defect was an issue for the jury. In the instant case, it is undisputed that the machine was manufactured with appropriate safety guards, but they were permanently removed by Parker.

Burrows also cites *Menifee, supra,* where the appellant died when his employer used an air compression system for a completely different purpose than for which it was intended. The court in *Menifee* held that "the design of a product cannot be held defective or unreasonably dangerous under Section 402A of the Restatement of Torts 2d unless the product is being used in an intended or reasonably foreseeable manner." *Id.,* 15 Ohio St.3d at 78, 15 OBR at 181, 472 N.E.2d at 710.

Burrows contends the holding in *Menifee* would naturally establish that a failure to replace the guard does not constitute a substantial alteration question. Burrows elaborates on this proposition by asserting that the foreseeability of the length of time the guard would remain removed is a jury issue.

However, the very fact that the machine in the present case was manufactured with a guard gives rise to the presumption that the manufacturer intended that it remain there for the protection of the operator, thereby rendering the machine safe for its intended use. Burrows did not present evidence that the machine contained an inherent design defect or that the

safety guard was inadequate. No testimony was offered that the machine was intended to be operated without the guards in place or that the guarding was required to be interlocked so as to render the machine inoperable if the guard was removed. While it was reasonable for Fastener to foresee removal of the guard for the feed roll changes, it was not foreseeable that the guards would be permanently removed with such a high risk of serious injury.

It is undisputed that the machine contained a guard when it left Fastener's factory, and it is well established that a manufacturer cannot be held liable where it had no knowledge, let alone control, over [a] subsequent substantial change. *King v. K.R. Wilson Co.* (1983), 8 Ohio St.3d 9, 10, 8 OBR 79, 79, 455 N.E.2d 1282, 1282. Therefore, Parker's substantial alteration of removing the safety guard relieves Fastener of any liability since the removal was the direct and proximate cause of Burrows' injuries.

In addressing Burrows' proffer of the affidavit of expert witness Gerald Rennell, we find that this affidavit does not present sufficient additional evidence to require disturbing the lower court's granting of summary judgment for Fastener. Furthermore, Burrows has not provided this court with an explanation for the untimeliness of this proffer.

We turn now to Fastener's cross-appeal. The trial court found that a possible issue of fact existed as to whether Fastener could be liable as a successor corporation under the holding in *Flaugher v. Cone Automatic Machine Co.* (1987), 30 Ohio St.3d 60, 30 OBR 165, 507 N.E.2d 331. However, because this court has affirmed the lower court's granting of summary judgment for Fastener, also finding that Parker's alteration of the machine rendered Fastener not liable, this issue is now moot.

The judgment of the Montgomery County Court of Common Pleas granting summary judgment in favor of Fastener Engineers, Inc. is affirmed.

*Judgment affirmed.*

WILSON and GRADY, JJ., concur.