DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Plaintiff-Appellant John Macken has appealed from the judgment of the Lorain County Court of Common Pleas which granted Defendant-Appellee's motion for directed verdict on both of Appellant's causes of action. This Court affirms in part and reverses in part.
 I {¶ 2} During 1998, Clay Krcal and Thomas Dodak and a third individual formed KDR Holdings, Ltd. ("KDR"). During its existence, KDR engaged in numerous activities such as job placement and a business called factoring, and eventually engaged in the purported development of a subdivision called Clayton's *Page 2 
Pointe. Krcal and Dodak explained that factoring consisted of buying receivables from companies at a discount and then pursuing the receivables to earn a profit. During 1998 and 1999, Appellant invested monies into this factoring business with KDR through Dodak and Krcal totaling roughly $46,000. For his investment, Appellant was promised a yearly return of 52%.
 {¶ 3} Around the time Appellant's investment was received, KDR received investments from numerous other individuals for its various alleged business pursuits. In 1999, KDR also negotiated to purchase undeveloped land which it planned to use to create a subdivision. KDR negotiated with the landowner and agreed to make a small down payment on the property. The remainder of the purchase price would be paid from proceeds generated by subdividing and developing the land which was to become Clayton's Pointe.
 {¶ 4} In June of 1999, KDR contracted to build a home for Robert and Patricia Rolen in Clayton's Pointe. Through an agreement between the parties, the Rolens gave KDR $120,000 in earnest money. In September of 1999, Timothy and Vicki Jenkins agreed to purchase a home from KDR in Clayton's Pointe and gave KDR $30,000 in earnest money. The Jenkins had their earnest money secured with a mortgage that was prepared by Appellee, Wickens, Herzer Panza. Finally, worried about the delay in the construction of their home, the Rolens received a mortgage deed from KDR that was prepared by Appellee. *Page 3 
 {¶ 5} Shortly after his investment, Appellant learned that Krcal had a criminal record and began to worry about the security of his investment. Accordingly, Appellant approached Krcal and Dodak about the possibility of securing his investment in some manner. On April 13, 2000, Dodak executed a mortgage deed on behalf of KDR in favor of Appellant ("the Macken deed"), purportedly involving a portion of the land KDR had contracted to purchase and granting Appellant a security interest in the amount of $75,000. This amount was chosen through mutual agreement of the parties based upon the principal amount invested by Appellant and included the accrued interest under the parties' agreement. The Macken deed had a block of text on it which stated that it was prepared by "Attorney Marsha L. Collett, Wickens, Herzer Panza."
 {¶ 6} Appellant accepted the mortgage deed as security for his investment. In March of 2000, Appellant learned that Krcal and Dodak had been indicted for theft. Specifically, Appellant learned that the two had used KDR to generate investments totaling over $500,000, but had never had the development approved to begin construction. Appellant later learned that due to this indictment Krcal had left the State of Ohio, prior to Dodak executing the Macken deed.
 {¶ 7} The actions of Krcal and Dodak were the subject of many media reports. In addition, the Rolens filed suit against KDR, Dodak, and Krcal, alleging fraud because their home was never constructed, the property was never even subdivided, and KDR refused to return their earnest money. During that case, *Page 4 
Dodak and Krcal were deposed and discussed the involvement of Appellee with regard to the preparation of legal documents on behalf of KDR. Appellant contends that Dodak testified in the Rolens' case that Appellee generally prepared all of the legal documents that KDR needed to conduct its business.
 {¶ 8} Once he became aware of the above facts, Appellant sought legal advice about the validity of the Macken deed. Appellant was informed that the deed contained inconsistent legal descriptions of the alleged mortgaged property. Specifically, the first page of the deed referred to Lot #37 and described the property as consisting of 2.019 acres. It is undisputed that the process of subdividing the land was never completed, so that Lot #37 has never legally existed. Moreover, the legal description of the land as detailed in Exhibit A to the deed describes the entire tract of land that was to be Clayton's Pointe, stating that the land consists of 30.14 acres. Appellant was informed that as a result of these inconsistencies, the mortgage deed was likely unenforceable.
 {¶ 9} On August 19, 2004, Appellant filed the instant action against KDR, Dodak, Krcal, and Defendant-Appellee Wickens, Herzer Panza. Appellant was unable to obtain service on KDR and subsequently dismissed his claims against that entity. Appellant, however, moved forward with claims against Dodak and Krcal including fraud and securities violations. In addition, Appellant moved forward with claims against Appellee which included legal malpractice and civil conspiracy. Specifically, Appellant alleged that Appellee acted in collusion with *Page 5 
Dodak and Krcal to prepare a fraudulent deed to aide Dodak and Krcal in retaining Appellant's $46,000 investment.
 {¶ 10} On November 15, 2005, Appellee moved for summary judgment on Appellant's claims. Based upon the evidence before it, the trial court concluded that an issue of fact remained surrounding the authorship of the mortgage deed.
 {¶ 11} On August 10, 2006, a jury trial commenced on Appellant's causes of action. During the trial, both Dodak and Krcal testified that Appellee was not involved in creating the Macken deed. Moreover, Attorney Marsha Collett, whose name appeared on the Macken deed, testified that she had no involvement in creating Appellant's mortgage deed. At the close of Appellant's case, Appellee moved for a directed verdict on both of Appellant's claims against it. The trial court granted that motion. Specifically, the trial court found that Appellant had presented no evidence that Appellee was involved with the creation of the Macken deed. The trial court continued, noting that Appellant's testimony at trial was markedly inconsistent with his pretrial affidavit opposing summary judgment. Thereafter, Appellant moved for a new trial. The trial court denied that motion. Appellant has timely appealed the trial court's judgment, raising five assignments of error. For ease of analysis, we have consolidated Appellant's first three assignments of error. *Page 6 
 II Assignment of Error Number One "THE TRIAL COURT IMPROPERLY GRANTED APPELLEE'S MOTION FOR DIRECTED VERDICT WHERE CONFLICTING EVIDENCE PRECLUDED THE GRANTING OF SUCH A MOTION."
 Assignment of Error Number Two "THE TRIAL COURT IMPROPERLY APPLIED THE STANDARD FOR GRANTING A MOTION FOR A DIRECTED VERDICT."
 Assignment of Error Number Three "THE TRIAL COURT IMPROPERLY DENIED APPELLANT HIS CONSTITUTIONAL RIGHT TO TRIAL BY JURY WHERE ISSUES OF FACT EXISTED AND ONLY A JURY COULD DECIDE THOSE ISSUES."
 {¶ 12} In his first three assignments of error, Appellant has urged that the trial court erred in granting Appellee's motion for directed verdict. Specifically, Appellant has asserted that the trial court improperly weighed the evidence in reaching its conclusion. This Court agrees in part.
 {¶ 13} Pursuant to Civ.R. 50(A)(4), a trial court is authorized to grant a directed verdict only when:
 "[A]fter construing the evidence most strongly in favor of the party against whom the motion is directed, [the court] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." *Page 7 
When ruling on a motion for a directed verdict, the court considers the sufficiency of the evidence. Wagner v. Roche Laboratories (1996),77 Ohio St.3d 116, 119, reversed on other grounds (1999),85 Ohio St.3d 457.
 "When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence." Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68; see, also, Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-85.
 {¶ 14} If the party opposing the motion for a directed verdict fails to present evidence on one or more of the essential elements of a claim, a directed verdict is proper. Hargrove v. Tanner (1990),66 Ohio App.3d 693, 695. Under the "reasonable minds" portion of Civ.R. 50(A)(4), the court is only required to consider whether there exists any evidence of probative value in support of the elements of the non-moving party's claim. See Coleman v. Excello-Textron Corp. (1989), 60 Ohio App.3d 32,40; Ruta, 69 Ohio St.2d at 69.
 {¶ 15} Appellant asserted two causes of action against Appellee in the trial court. For ease, we review the trial court's directed verdict on those causes of action individually.
Legal Malpractice {¶ 16} To establish a case for legal malpractice one must prove three elements: 1) the attorney owed a duty; 2) there was a breach of that duty and the *Page 8 
attorney failed to conform to the standard of care required by law; and 3) there was a causal connection between the conduct complained of and the resulting damage. Vahila v. Hall (1997), 77 Ohio St.3d 421, 427. Generally, "an attorney may not be held liable by third parties as a result of having performed services on behalf of a client, in good faith, unless the third party is in privity with the client for whom the legal services were performed, or unless the attorney acts with malice."Simon v. Zipperstein (1987), 32 Ohio St.3d 74, 76. In determining privity in the context of standing to bring a malpractice claim, we must determine whether the parties' interests are the same, such that representing the client is equivalent to representing the party alleging privity with the client. See Scholler v. Scholler (1984),10 Ohio St.3d 98, 103-04. "For legal malpractice purposes, privity between a third person and the client exists where the client and the third person share a mutual or successive right of property or other interest." Sayyah v.Cutrell (2001), 143 Ohio App.3d 102, 111-112.
 {¶ 17} Appellee has argued that Appellant lacks the requisite standing to pursue his legal malpractice claim. Under the unique facts of this case, we find that Appellant has standing to pursue his claim. At the time Appellee was alleged to have performed legal services on behalf of KDR, Appellant had an existing relationship with KDR. In fact, Appellant had previously invested over $40,000 with KDR. Appellant then approached KDR and requested a security interest in land to secure this outstanding investment. Appellant alleged that Appellee *Page 9 
prepared the instrument that was intended to create this security interest. Given the existing contractual relationship between Appellant and KDR, we find that the parties' interests in preparing the mortgage deed were aligned. Both parties sought to encumber a specific portion of Clayton's Pointe in order to secure Appellant's investment. In addition, both parties agreed upon the amount of the encumbrance. As such, we conclude that under these facts, representing KDR for this transaction was the equivalent of representing Appellant. Consequently, Appellant has standing to pursue his malpractice claim.
 {¶ 18} Both parties concede on appeal that the only manner through which Appellee could conceivably be liable to Appellant is if Appellant was able to establish that Appellee prepared the Macken deed. Accordingly, we review the record to determine if any probative evidence existed to support this conclusion.
 {¶ 19} Appellant is correct in his assertion that Dodak's testimony on how he created the Macken deed was inconsistent. We find that this testimony coupled with the Macken deed itself provided evidence sufficient to be submitted to a jury.
 {¶ 20} As noted earlier, the Macken deed has the following language contained on its second page:
"This Instrument Prepared By:
 "Attorney Marsha L. Collett
 "WICKENS, HERZER PANZA
 "A Legal Professional Association" *Page 10 
Dodak offered no consistent explanation for how this occurred. He testified on one occasion that he had received a document in the mail and filled in all the blanks. Later, he asserted that the document was created from a disk that Krcal had in his possession. In his deposition in this case, Dodak stated that he had "prepared everything that's written in, but I didn't prepare the document." Dodak never explained this testimony. Moreover, if taken at its face value, Dodak was not involved in drafting the legal descriptions used in the Macken deed. Specifically, the only handwritten information on the Macken deed consists of the signatures of KDR's representative and Macken and their notarization.
 {¶ 21} Marsha Collett, an attorney at Appellee's office, was also called to testify. Collett testified that she worked for Appellee, that she had been an attorney for twenty-five years, and that roughly 80% of her work dealt with real estate transactions. Collett admitted that she had prepared numerous documents for KDR during its purported development of Clayton's Pointe. Collett also admitted that her billing notes for April 7, 2000 contain the following:
 "Review of issues re: imposing additional mortgages upon real estate and discussion with and advice to Mr. Dodak re: same."
In addition, Collett's billing notes for April 8, 2000 contain the following:
 "Review of provisions of mortgages re: permission to further encumber real estate."
The Macken deed was in turn executed on April 13, 2000. Collett, however, testified that the above billing notes do not relate to the Macken deed, but instead *Page 11 
relate to other mortgages that Dodak discussed with her. Collett, however, could offer no explanation for how "Prepared by: Attorney Marsha L. Collett, Wickens, Herzer Panza" appeared on the Macken deed. When asked whether her firm had provided a disk to KDR, she responded, "I don't — I don't recall. I don't think so."
 {¶ 22} Accordingly, Appellant presented documentary evidence, the deed itself, that demonstrated that the Macken deed had been prepared by Appellee. Further, while Collett disputed that her billing notes referenced the Macken deed, the jury could infer based upon the timing of those notes and their language that Collett had discussed the Macken deed with Dodak. In turn, Appellee offered no consistent explanation for how its name appeared on the Macken deed and admitted to having prepared numerous deeds for KDR in the past.
 {¶ 23} Appellee may be correct in its assertion that substantial evidence supports a finding that it did not create the Macken deed. However, weighing the evidence when ruling upon a directed verdict is impermissible. Appellant presented some competent, credible evidence that the deed was prepared by Appellee and thus Appellee owed a duty to Appellant. Further, the parties' have not disputed that Appellant presented competent, credible evidence on the remaining prongs of his legal malpractice claim. Accordingly, the trial court erred in not submitting the matter to the jury. *Page 12 
Civil Conspiracy {¶ 24} In a claim for civil conspiracy, a claimant must prove "(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself." Pappas v. United ParcelService (Apr. 11, 2001), 9th Dist. No. 20226, at *5, citingUniversal Coach, Inc. v. New York City Transit Auth, Inc. (1993),90 Ohio App.3d 284, 292; see, also, LeFort v. Century 21-Maitland RealtyCo. (1987), 32 Ohio St.3d 121, 126 (defining civil conspiracy as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."). Further, "[t]he malice involved must include an action done `purposely, without a reasonable or lawful excuse, to the injury of another.'" Pappas, supra, at *5, quoting Gosden v. Louis (1996),116 Ohio App.3d 195, 219.
 {¶ 25} On appeal, Appellant has made no argument which analyzes any of the four prongs of civil conspiracy. Upon review, we find that Appellant failed to present evidence of any malicious combination. Having found that Appellant presented sufficient evidence on the issue of whether Appellee created the Macken deed does not address the malice required for civil conspiracy. Appellant presented no evidence of any knowledge by Appellee of any fraudulent activity by KDR. Rather, the sole evidence presented by Appellant may support a finding that Appellee negligently prepared the Macken deed. There is no evidence, *Page 13 
however, that the Macken deed was purposely prepared in a manner to make it unenforceable. As such, Appellant failed to present evidence on each of the elements of his civil conspiracy claim and the trial court properly granted Appellee's directed verdict on Appellant's claim of civil conspiracy.
 {¶ 26} Accordingly, the trial court properly granted Appellee's motion for directed verdict on Appellant's civil conspiracy claim. The trial court, however, improperly granted a directed verdict on Appellant's legal malpractice claim. Appellant's first, second, and third assignments of error are sustained in part and overruled in part.
 Assignment of Error Number Four "THE TRIAL COURT IMPROPERLY DENIED APPELLANT'S AMENDED MOTION FOR NEW TRIAL WHERE APPELLANT SET FORTH ADEQUATE GROUNDS FOR THE GRANTING OF SAID MOTION."
 {¶ 27} In his fourth assignment of error, Appellant has asserted that the trial court erred in denying his motion for a new trial. We disagree.
 {¶ 28} Initially, this Court notes that Appellant's fourth assignment of error is moot with respect to his claim for legal malpractice due to our resolution of Appellant's first three assignments of error. As such, we do not address the legal malpractice claim. Accordingly, we address this assignment of error solely as it relates to Appellant's civil conspiracy claim.
 {¶ 29} An appellant has the burden on appeal. See App.R. 16(A)(7); Loc.R. 7(A)(7). "It is the duty of the appellant, not this court, to demonstrate his *Page 14 
assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. Pursuant to App.R. 16(A), an appellant's brief shall include the following:
 "(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." (Emphasis added.)
This Court may disregard arguments if the appellant fails to identify the relevant portions of the record from which the errors are based. See App.R. 12(A)(2); Loc.R. 7(F).
 {¶ 30} In his fourth assignment of error, Appellant quotes Civ.R. 59 in its entirety. Appellant then states in a conclusory fashion that he demonstrated that the trial court's judgment was contrary to law. Appellant does not cite to his motion for a new trial. Moreover, Appellant does not attempt to explain why the trial court's judgment was contrary to law or how he demonstrated such an error. Accordingly, he has not met his burden of demonstrating error. Appellant's fourth assignment of error lacks merit.
 Assignment of Error Number Five "THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 31} In his final assignment of error, Appellant has asserted that the trial court's judgment was against the manifest weight of the evidence. Accordingly, *Page 15 
our resolution of Appellant's first, second, and third assignments of error has rendered this error moot and we decline to address it. See App.R.12(A)(1)(c).
 III {¶ 32} Appellant's first, second, and third assignments of error are sustained in part and overruled in part. Appellant's fourth assignment of error is overruled and his fifth assignment of error is moot and we decline to address it. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 16 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
DONNA J. CARR FOR THE COURT
CARR, J. MOORE, J. CONCURS