DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 A FAMILIAR STORY {¶ 1} LeRoy and Helen Brummert had three daughters. After Helen died, one of the daughters, Brenda, lived with and cared for LeRoy. The other two, Barbara and Rebecca, lived out of town. LeRoy's will provided that his estate would be divided equally among his three daughters. When LeRoy died, however, most of his property transferred automatically to Brenda. Barbara and Rebecca sued Brenda, arguing that their father had always intended that his property would be divided equally among the three sisters and that Brenda had committed fraud, *Page 2 
breached a fiduciary duty to their father, exerted undue influence over him, and intentionally interfered with their inheritance. A jury awarded Barbara and Rebecca $196,500: $65,500 on their fraud claim; $65,500 on their breach of fiduciary duty claim; and $65,500 on their intentional interference with inheritance claim. Brenda has appealed. This Court reverses the jury's verdict because: (1) the trial court should have dismissed Barbara and Rebecca's fraud claim; (2) the trial court should have dismissed their breach of fiduciary duty claim; and (3) the trial court should have dismissed the intentional interference with inheritance claim from their Probate Division complaint and the judgment in their favor on that claim based upon their General Division complaint was not supported by sufficient evidence.
 BACKGROUND {¶ 2} Helen Brummert died on October 13, 1999. Her will named her husband, LeRoy Brummert, as her executor and provided that, after her debts were paid, LeRoy would receive the remainder of her estate.
 {¶ 3} Even though Helen's will needed to be probated in Medina County and had been prepared by a Medina County lawyer who continued to practice in that county, LeRoy retained a Summit County lawyer to handle Helen's estate. LeRoy and Helen's daughter Brenda acknowledged that she had recommended to LeRoy that he retain the Summit County lawyer, a woman who practiced with a firm for which Brenda did accounting. *Page 3 
 {¶ 4} When the first lawyer retained by LeRoy left practice to become a magistrate, he retained, based on Brenda's recommendation, a second Summit County lawyer to complete the probate of Helen's estate. Brenda had become acquainted with this lawyer when the lawyer had handled the estate of an accountant for whom Brenda had worked. At the time of the recommendation, Brenda was working as a bookkeeper for the lawyer. Brenda testified at trial that this lawyer "was an expert in the preparation of wills and estate planning documents, in addition to probating those documents when a person died."
 {¶ 5} As mentioned above, Helen died in October 1999. In July 2000, Brenda, who at that time was separated and getting a divorce, moved into LeRoy's home with him. She testified that she did so because LeRoy "needed companionship and somebody to help him wash clothes, clean the house, make sure he was taken care of."
 {¶ 6} Brenda remarried during April 2002 and, during May 2002, moved with her husband to Toledo. In August 2002, she delivered her first daughter prematurely at Akron City Hospital. The daughter was hospitalized at Akron Children's Hospital for an extended period, and Brenda moved back in with her father. In September 2002, her husband also moved in with LeRoy. Brenda and her family lived with LeRoy until July 2003, when they moved to Milwaukee. In November 2004, they moved back in with LeRoy and lived with him until his death on January 21, 2005. *Page 4 
 {¶ 7} While Brenda lived with LeRoy at various times between Helen's death and LeRoy's death, Barbara and Rebecca lived out of town. Barbara was living in the Cleveland area at the time of Helen's death. She moved to Michigan during December 2003 and was still living there at the time of LeRoy's death. It appears that Rebecca lived in Florida between Helen's death and LeRoy's death, except for a period between August 2001 and May 2002 when she lived in Pittsburgh.
 {¶ 8} Between Helen's death and LeRoy's death, LeRoy, at various times, suffered from different medical conditions. During November 2001, he was hospitalized for kidney failure. He had a knee replaced during April 2000 and, during the summer of 2002, developed a staph infection, which led to him having the knee re-replaced during August 2002. He also had type-two diabetes. Except for the times he was hospitalized for kidney failure and in connection with his knee, he was able to engage in normal activities, including driving and working in his garden. There was no evidence that he was incompetent at any time, although there was some evidence that he may have been treated with morphine shortly before his death.
 {¶ 9} On January 2, 2003, LeRoy executed a will that had been drafted for him by a third Summit County lawyer recommended by Brenda. Brenda also did bookkeeping for this lawyer. The lawyer testified that he is primarily a trial lawyer, but that he drafts, on average, four to six simple wills a year. Brenda *Page 5 
testified that she recommended him instead of the second lawyer who had handled her mother's estate because he charged $65 to draft a simple will, whereas the second lawyer who had handled Helen's estate would have charged $250. The will named Brenda as LeRoy's executrix and provided that, after his debts were paid, any remaining assets would be divided among his three daughters.
 {¶ 10} Following LeRoy's death, Brenda applied to the Medina County Probate Court to relieve his estate from administration. She listed as the only assets of the estate a car valued at $3800 and a life insurance policy valued at $3000. She later determined that LeRoy had a 25% interest in a rental property that is also part of his estate. That 25% interest is valued at approximately $42,500, so the total value of the assets in LeRoy's estate is approximately $49,300.
 {¶ 11} Barbara and Rebecca believe three categories of property that passed automatically to Brenda when LeRoy died should instead have been part of his estate to be equally divided among the three sisters. Those three categories of property are: (1) certificates of deposit; (2) certain real estate; and (3) annuities.
 {¶ 12} The certificates of deposit were all issued by Fifth Third Bank. During August 2001, the bank issued three certificates of deposit to "LeRoy E. Brummert or Helen K. Brummert or Brenda K. Brummert." During June 2002, it issued a fourth certificate of deposit to "LeRoy E. Brummert or Brenda K. Daugherty." *Page 6 
(As mentioned previously, Brenda had remarried during April 2002.) The total face value of these four certificates of deposit was $14,946.46.
 {¶ 13} The real estate that Barbara and Rebecca believe should have been part of LeRoy's estate is made up of three parcels, including the parcel on which LeRoy's home is located. These parcels passed to Brenda under a transfer on death deed prepared by the second lawyer who handled Helen's estate. A notary certificate on the deed indicates that LeRoy signed it on November 3, 2001. The deed, however, was not recorded until October 31, 2002. The three parcels transferred under the deed have an approximate value of $202,718.
 {¶ 14} There are three annuities that Barbara and Rebecca believe should have been part of LeRoy's estate. LeRoy purchased one of them during March 2002 from We stern-Southern Life Assurance Company. He purchased the other two during February 2003 from AIG. LeRoy named Brenda as the beneficiary of each of the annuities. They have a total face value of $52,353.06.
 {¶ 15} This appeal is from two separate lawsuits that Barbara and Rebecca filed against Brenda in the Medina County Common Pleas Court. They filed the first in the Probate Division and the second in the General Division. The complaints in both were identical, each containing six counts. By the first four counts, Barbara and Rebecca sought damages based upon averments that Brenda had committed fraud, breached a fiduciary duty to their father, exerted undue influence over him, and intentionally interfered with their inheritance. By the fifth *Page 7 
and sixth counts, they sought declaratory relief and imposition of a constructive trust.
 {¶ 16} The presiding judge of the Common Pleas Court appointed the Probate Judge to sit as a member of the General Division and consolidated the cases before him. The consolidated cases were tried before a jury, which returned verdicts against Brenda for $65,500 on each of Barbara and Rebecca's fraud, breach of fiduciary duty, and interference with inheritance claims. The jury also found that Brenda had exercised undue influence over LeRoy, but did not award Barbara and Rebecca any damages on that claim. In view of the jury's verdicts on the first four counts of Barbara and Rebecca's complaints, the trial court held that their requests for declaratory relief and imposition of a constructive trust were moot. Brenda has assigned five errors on appeal.
 FRAUD {¶ 17} Brenda's first assignment of error is that the trial court incorrectly failed to grant her motion to dismiss her sisters' fraud claim. The fourth count of each complaint was an allegation that Brenda had committed fraud against LeRoy and her sisters by "inducing [LeRoy] to convert essentially all of his assets to non-probate assets which passed to [Brenda], contrary to [LeRoy's] intention that his three daughters share equally."
 {¶ 18} Brenda moved the trial court for a definite statement of the fourth count or, alternatively, for its dismissal, arguing that Barbara and Rebecca had *Page 8 
failed to state the circumstances allegedly constituting fraud with particularity. The trial court failed to rule on that motion prior to trial. Following trial, the trial court denied it.
 {¶ 19} In her motion for a definite statement or to dismiss Barbara and Rebecca's fraud claim, Brenda cited Rule 9 and Rule 12(E) of the Ohio Rules of Civil Procedure. To the extent she sought dismissal of that claim, however, her motion was, in substance, a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(B)(6) of the Ohio Rules of Civil Procedure. This Court reviews rulings on motions to dismiss for failure to state a claim de novo. SeeTripp v. Beverly Enterprises-Ohio Inc., 9th Dist. No. 21506,2003-Ohio-6821, at ¶ 59.
 {¶ 20} In order to recover for fraud, a plaintiff must prove five things: "(1) a material false representation [or, if there is a duty to disclose, a failure to disclose] (2) knowingly made (3) with the intent to induce reliance (4) reasonable reliance upon the misrepresentation by the plaintiff and (5) damages proximately caused by the reliance."Carter-Jones Lumber Co. v. Denune, 132 Ohio App. 3d 430, 434 (1999);Bellinger v. Hewlett-Packard Co., 9th Dist. No. 20744, 2002-Ohio-1643, at *4. Although, under Rule 8(A) of the Ohio Rules of Civil Procedure, a claim for relief generally must contain only "a short and plain statement of the claim showing that the party is entitled to relief," Rule 9(B) of the *Page 9 
Ohio Rules of Civil Procedure imposes a more stringent requirement on claims that a defendant committed fraud:
 In all averments of fraud . ., the circumstances constituting fraud . . . shall be stated with particularity. . . .
The "circumstances constituting fraud," as that phrase is used in Rule 9(B), "include the time, place, and content of the false representation; the fact misrepresented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud." Advanced Production Center Inc. v. Emco MaierCorp., 5th Dist. No. 2003CAE03020, 2003-Ohio-6206, at ¶ 15. Three reasons are usually given for Rule 9(B)'s particularity requirement:
 First, particularity is required to protect defendants from the potential harm to their reputations which may attend general accusations of acts involving moral turpitude. Second, particularity ensures that the obligations are concrete and specific so as to provide defendants notice of what conduct is being challenged. Finally, the particularity requirement inhibits the filing of complaints as a pretext for discovery of unknown wrongs.
Korodi v. Minot, 40 Ohio App. 3d 1, 4 (1987).
 {¶ 21} Before reviewing the allegations of Barbara and Rebecca's complaint to determine whether they satisfied Rule 9(B) and, therefore, stated a claim upon which relief can be granted, this Court notes that Barbara and Rebecca moved to amend their complaint at the close of their case in chief to conform to the evidence and the trial court granted that motion. The trial court did not, however, require Barbara and Rebecca to file a new pleading. Rather it "simply *Page 10 
order[ed] [the complaint] amended to conform with this evidence, as opposed to filing a new written amended complaint. . . ." Barbara and Rebecca have not suggested that their "amended complaint" is the pleading relevant to Brenda's first assignment of error, and this Court has determined that it is not. Allowing plaintiffs to remedy a failure to comply with Rule 9(B) at the close of their case in chief would defeat the reasons for the rule. Besides, in this case, the defect present in Barbara and Rebecca's complaint was also present in the evidence they presented at trial.
 {¶ 22} Barbara and Rebecca did not specify the time, place, or content of any false representation or failure to disclose. Rather, they only alleged in a conclusory manner that Brenda had committed fraud by "inducing [LeRoy] to convert essentially all of his assets to non-probate assets." In their brief to this Court, they have pointed out that the fourth counts incorporated all the preceding paragraphs of the respective complaints. That fact, however, does not cure the problem. At no point in their complaints did they allege the time, place, or content of any false representation allegedly made by Brenda or a failure to disclose on her part.
 {¶ 23} As mentioned above, Barbara and Rebecca have not suggested that their "amended complaint" is the pleading relevant to Brenda's first assignment of error. This Court notes, however, that they failed to present evidence at trial of the time, place, or content of any false representation allegedly made by Brenda or *Page 11 
failure to disclose on her part. At the time they argued to the trial court in support of their motion to amend their complaint to conform to the evidence, they pointed out that it was a "physical impossibility" that LeRoy had signed the transfer on death deed on November 3, 2001, because he was in the hospital that day. While they invited speculation that Brenda had recommended the various Summit County lawyers to LeRoy for a nefarious reason, they presented no evidence of the time, place, or content of any false representation by Brenda or failure to disclose on her part that led to the incorrect date on the transfer on death deed. More to the point, they presented no evidence of the time, place, or content of any false representation by Brenda or failure to disclose on her part that led to LeRoy signing the deed transferring real estate to her on his death, to his adding her name to the certificates of deposit, or to his naming her as the beneficiary of the annuities.
 {¶ 24} Barbara and Rebecca failed to state their fraud claim against Brenda with specificity as required by Rule 9(B) of the Ohio Rules of Civil Procedure. Accordingly, the trial court should have granted Brenda's motion to dismiss the fourth count of Barbara and Rebecca's complaints. Brenda's first assignment of error is sustained.
 FIDUCIARY DUTY {¶ 25} Brenda's second assignment of error is that the trial court incorrectly failed to grant her motion to dismiss her sisters' breach of fiduciary duty claim. *Page 12 
The first count of each complaint was an allegation that Brenda, "[a]s [LeRoy's] caregiver, . . . owed [LeRoy] a fiduciary duty of good faith and fair dealing," and had "breached her fiduciary duty to [LeRoy] . . ." proximately causing damages to Barbara and Rebecca. Brenda moved to dismiss the first count of Barbara and Rebecca's complaints, arguing that they could not recover based on violation of a duty allegedly owed their father. As with Brenda's motion to dismiss the fourth count of Barbara and Rebecca's complaints, the trial court failed to rule on Brenda's motion to dismiss the first count until after trial. At that time, it denied her motion without providing a rationale for doing so.
 {¶ 26} As has been recognized by the Ohio Supreme Court, a claim based upon an alleged breach of fiduciary duty is basically a negligence claim, "albeit involving a higher standard of care." Strock v.Pressnell, 38 Ohio St. 3d 207, 216 (1988). As with any negligence claim, in order to be entitled to recover, a plaintiff must allege and prove a duty running from the defendant to the plaintiff, a violation of that duty, and damages proximately caused by the breach. Id. While Barbara and Rebecca alleged a duty running from Brenda to LeRoy, neither LeRoy nor his estate was a party to this case. They failed to allege that Brenda owed them a fiduciary duty and, therefore, failed to state a claim for breach of fiduciary duty upon which relief could be granted.
 {¶ 27} In their argument to this Court, Barbara and Rebecca have not even argued that they stated a claim for breach of fiduciary duty upon which relief *Page 13 
could be granted in this case. Rather, they have argued that they were entitled to the relief they recovered in this case by way of a different proceeding in the Probate Division. It would be inappropriate for this Court to affirm the erroneous decision of the trial court in this case based upon speculation about whether Barbara and Rebecca would succeed on a different claim in a different case. Brenda's second assignment of error is sustained.
 INTENTIONAL INTERFERENCE WITH INHERITANCE {¶ 28} Brenda's fifth assignment of error is that the trial court incorrectly failed to dismiss her sisters' intentional interference with inheritance claim. As noted previously, Barbara and Rebecca filed identical complaints in the Probate and General Divisions of the Common Pleas Court and they were consolidated for trial. The third count of each complaint was an allegation that Brenda had intentionally interfered with Barbara and Rebecca's right of inheritance from LeRoy. In moving to dismiss the third count of the complaints, Brenda argued that the Probate Division lacked jurisdiction over that claim. She made no argument addressed to the identical claim in the General Division complaint. As with her other motions to dismiss, the trial court failed to rule on her motion to dismiss the third count until after trial, at which time it denied that motion without providing a rationale beyond pointing out that Barbara and Rebecca had made the same claim in their General Division complaint as they had in their Probate Division complaint. *Page 14 
 {¶ 29} Brenda has argued two things to this Court in support of her fifth assignment of error. First, she has argued, based on Roll v.Edwards, 156 Ohio App. 3d 227 (2004), that the Probate Division was without jurisdiction over Brenda and Rebecca's intentional interference with inheritance claim. This is the argument she made to the trial court in support of her motion to dismiss the third counts of Barbara and Rebecca's complaints. Barbara and Rebecca have not responded to this argument in their brief to this Court or otherwise suggested a rationale that would bring their intentional interference with inheritance claim within the Probate Division's plenary jurisdiction. This Court has concluded, based upon the reasoning found in Roll, that the Probate Division did not have jurisdiction over that claim. Id. at ¶ 22-24. To the extent Brenda's fifth assignment of error is addressed to the trial court's failure to dismiss the third count of the Probate Division complaint, therefore, it is sustained.
 {¶ 30} Brenda's second argument in support of her fifth assignment of error is that the trial court failed to dismiss the third count of Barbara and Rebecca's complaints because their intentional interference with inheritance claim was not ripe. Inasmuch as the trial court, to the extent it was sitting in the Probate Division, was without jurisdiction over this claim, Brenda's argument regarding ripeness is moot in regard to the Probate Division complaint. In regard to her General Division complaint, she failed to raise this argument in support of her motion to dismiss in the trial court and cannot raise it for the first time on appeal. *Page 15 Bank One N.A. v. Swartz, 9th App. Dist. No. 03CA008308, 2004-Ohio-1986, at ¶ 17. To the extent Brenda's fifth assignment of error is addressed to the trial court's failure to dismiss the third count of Barbara and Rebecca's General Division complaint, therefore, it is denied.
 {¶ 31} Brenda's third assignment of error is that the jury's verdict on Barbara and Rebecca's intentional interference with inheritance claim was not supported by sufficient evidence. In order to be entitled to recover based upon their claim of intentional interference with inheritance, Barbara and Rebecca would have had to prove five essential elements:
 (1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant(s) with that expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference.
Firestone v. Galbreath, 67 Ohio St. 3d 87, 88 (1993).
 {¶ 32} In Roll v. Edwards, 156 Ohio App. 3d 227 (2004), the Fourth District Court of Appeals determined that an intentional interference with inheritance claim was not ripe because the plaintiffs had not exhausted a potential probate remedy. The unexhausted remedy inRoll was a will contest action. The Fourth District explained that, until such time as the plaintiffs in that case had exhausted their remedies in the Probate Division, they would not have incurred *Page 16 
any damages as a result of the defendant's alleged intentional interference with their inheritance:
 [W]e find that until the probate court has rendered a decision in the will contest, it is uncertain whether [the plaintiffs] have suffered any damages as a result of [the defendant's] alleged intentional interference with their expectancy of inheritance. Hence, we find that their claim for intentional interference with expectancy of inheritance is not yet ripe for judicial review.
Id. at ¶ 31.
 {¶ 33} By the sixth count of their complaints in this case, Barbara and Rebecca sought a declaratory judgment that the certificates of deposit, real estate, and annuities that transferred to Brenda upon LeRoy's death should be part of his estate. The trial court denied that relief as moot. The question of whether the declaratory relief sought by Barbara and Rebecca is the proper method of litigating whether that property should be included in LeRoy's estate is not before this Court, and it expresses no opinion on that question. Unless and until Barbara and Rebecca exhaust whatever remedies they have to attempt to have that property included in LeRoy's estate, however, they will not have suffered any injury based on Brenda's alleged intentional interference with inheritance. Since damage is an essential element of an intentional interference with inheritance claim, the jury's verdict in their favor on the third count of their General Division complaint was not supported by sufficient evidence. To the extent Brenda's third assignment of error is addressed to the third count of Barbara and Rebecca's General Division complaint, it is sustained. *Page 17 
 WEIGHT OF THE EVIDENCE {¶ 34} Brenda's fourth assignment of error is that the amount of damages awarded Barbara and Rebecca was not supported by the weight of the evidence. In view of this Court's ruling on her other assignments of error, this assignment of error is moot and is overruled on that basis.
 CONCLUSION {¶ 35} Brenda's first and second assignments of error are sustained, her third and fifth assignments of error are sustained in part and overruled in part, and her fourth assignment of error is overruled. The trial court's judgment is reversed, and this matter is remanded for further proceeding consistent with this opinion.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 18 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellees.
MOORE, P. J. REECE, J. CONCUR
(Reece, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1