[Cite as *Carter v. Univ. Park Dev. Corp.*, 2022-Ohio-3462.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ROGER W. CARTER

     Appellant

     v.

UNIVERSITY PARK DEVELOPMENT
CORPORATION, et al.

     Appellees

C.A. Nos.     30035
                 30180

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV-2015-11-5429

DECISION AND JOURNAL ENTRY

Dated: September 30, 2022

HENSAL, Judge.

**{¶1}** Roger Carter appeals multiple orders of the Summit County Court of Common Pleas in his action against University Park Village, LLC ("the Village"), University Park Development Corp., doing business as University Park Alliance ("UPA"), and individual trustees of UPA. For the following reasons, this Court affirms.

I.

**{¶2}** Mr. Carter owned property near the University of Akron campus that used to have dwellings on it that he rented out. In January 2012, he and UPA formed the Village with UPA as its managing member and Mr. Carter as its non-managing member. The purpose of the Village was to pursue a real estate development project on the property Mr. Carter owned. Under the Village's operating agreement, Mr. Carter promised to contribute his property and $150,000 to the project. He also removed the tenants that were occupying the dwellings and the dwellings were demolished.

{¶3} According to the Village's operating agreement, UPA's capital contribution was $2,850,000. Mr. Carter discovered later, however, that UPA had only contributed $83,705 in cash. He sued the Village, UPA, and UPA's individual trustees, asserting claims for declaratory judgment, breach of fiduciary duties, negligent misrepresentation, fraud in the inducement, common law fraud, breach of contract, rescission, unjust enrichment, civil conspiracy, alter ego, statutory specific performance, and member derivative action. The trial court dismissed or granted summary judgment to the Village, UPA, and the individual trustees on all but the breach of contract claim. A jury subsequently found against Mr. Carter on that claim. Mr. Carter has appealed, assigning seven assignments of error. This Court will address some of the assignments of error out of order to consider the pretrial and trial-related assignments of error together.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED, TO THE PREJUDICE OF CARTER, BY DENYING HIS MOTION FOR SUMMARY JUDGMENT REQUIRING PAYMENT OF THE CAPITAL CONTRIBUTION BALANCE.

{¶4} In his first assignment of error, Mr. Carter argues that the trial court incorrectly dismissed and failed to grant partial summary judgment to him on count ten, which was for statutory specific performance. In count ten, Mr. Carter requested that UPA be required to contribute the difference between the $2,850,000 it was supposed to contribute to the Village under the operating agreement and the amount it had contributed. The trial court dismissed the count because it determined that statutory specific performance is a remedy, not an independent cause of action.

{¶5} Mr. Carter argues that the trial court should not have dismissed count ten because UPA and the Village did not move to dismiss the count. He also argues that his claim was

authorized under former Revised Code Section 1705.09. According to Mr. Carter, he pleaded the elements of a claim under Section 1705.09 and there is no question that UPA failed to contribute the entire $2,850,000 it was required under the operating agreement.

{¶6} In its partial motion to dismiss, UPA argued that, if Mr. Carter proved his breach of contract claim, his injury could be remedied by monetary damages. Because monetary damages would address any injury Mr. Carter might have suffered, UPA argued that specific performance and rescission should be unavailable to him. Accordingly, upon review of UPA's motion, we do not agree that the trial court granted relief that was not requested.

{¶7} "Specific performance of a contract is a[n] * * * equitable remedy." *Sternberg v. Bd. of Trustees of Kent State Univ.*, 37 Ohio St.2d 115, 118 (1974). Accordingly, the trial court did not err when it wrote that specific performance is a remedy and not an independent cause of action.

{¶8} On the other hand, Section 1705.09(C) provides that "a member is obligated * * * to perform any enforceable promise to contribute cash or other property[.]" R.C. 1705.09(C). It also provides that, "[i]f a member fails to make a required contribution of property or services, then, at the option of the limited liability company, the member is obligated to contribute cash equal to the portion of the value * * * that the member has failed to make." *Id.* In count ten of his complaint, Mr. Carter argued that UPA had failed to pay, and the Village had failed to collect, the entire amount UPA owed to the Village under the operating agreement. He, therefore, argued that, under Section 1705.09(C), UPA should be required to contribute the unpaid amount in cash.

{¶9} Pleadings must be "construed as to do substantial justice." Civ.R. 8(F). In dismissing count ten, the trial court incorrectly focused on Mr. Carter's request for specific performance instead of his request for enforcement of Section 1705.09(C), which was his actual

cause of action. We note, however, that the Village's operating agreement provided that UPA "has contributed to the capital of the Company the value of property set forth opposite its name in Schedule A * * *. No further contribution of capital shall be required * * *." Schedule A provided that the value of UPA's "Capital and other Contributions" was $2,850,000. Under the version of Section 1705.09(A) that was in effect at the time the Village was formed, the contributions of a member could be "made in cash, property, services rendered, a promissory note, * * * or by any combination of these." There was no requirement for any, let alone all, of UPA's contribution to be made in cash. Accordingly, upon review of the record, we conclude that any error by the trial court in dismissing Mr. Carter's claim under Section 1705.09(C) was harmless. Civ.R. 61. Mr. Carter's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED, TO THE PREJUDICE OF CARTER, BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT DISMISSING CARTER'S MEMBER DERIVATIVE ACTION CLAIMS.

{¶10} In his second assignment of error, Mr. Carter argues that the trial court incorrectly granted summary judgment to UPA and the Village on his member derivative-action claim. In count eleven of his complaint, Mr. Carter asserted that, because the Village had refused to enforce the terms of the operating agreement, he demanded that UPA pay the Village the balance of the capital contribution it owed under the operating agreement. The trial court determined that Mr. Carter did not have standing to bring a derivative action on behalf of the Village, however, because the Village is member managed and Section 1705.49 only provides that authority to members of limited liability companies "in which the management is not reserved to its members[.]"

{¶11} Mr. Carter argues that the Village is not managed by its members and has a designated manager, which is UPA. The operating agreement creates two classes of members,

managing members and non-managing members. It indicates that there is one managing member, UPA, and one non-managing member, Mr. Carter. It gives the managing member full and exclusive right, power, and authority to conduct the business of the company.

{¶12} Mr. Carter notes that the operating agreement's definition of managing member indicates that each managing member "shall be deemed to be a 'manager' of the Company[.]" He also notes that, under former Section 1705.25(C), "a person who is both a manager and a member of a limited liability company has the rights and powers of a manager, is subject to the restrictions and liabilities of a manager, and, to the extent of his membership interest, has the rights and powers of a member and is subject to the restrictions and liabilities of a member." According to Mr. Carter, the fact that the manager of an LLC is also a member does not make any difference under Section 1750.49.

{¶13} Mr. Carter also argues that, under former Section 1705.50, there were only two conditions for a member to bring a derivative claim and he met both. That section provided that, to commence a derivative action, the plaintiff had to be a member at the time of bringing the action and had to have been a member at the time of the transaction of which he complains.

{¶14} Mr. Carter further argues that, because UPA and the Village did not challenge his standing to bring a derivative action on behalf of the Village, the trial court erred when it granted summary judgment to them on that basis. Upon review of the record, however, because UPA did not fail to make any of its required capital contribution to the Village, we conclude that any error by the trial court in dismissing count eleven was harmless. Civ.R. 61. Mr. Carter's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED, TO THE PREJUDICE OF CARTER, BY ISSUING ORDERS PROHIBITING APPELLANT FROM CONDUCTING ANY DISCOVERY.

{¶15} In his third assignment of error, Mr. Carter argues that the trial court incorrectly prevented him from conducting any new discovery in this action. Although noting that he was able to incorporate the discovery he obtained in a prior action he filed against UPA and the Village, he argues it was inadequate because there had been severe limitations placed on the scope of the depositions that he took in that action and on which members of UPA's board of directors he was allowed to depose. He also argues that UPA never answered the interrogatories or request for production of documents that he sent it and that two accounting firms did not respond to the subpoenas duces tecum that he sent them. Mr. Carter further argues that the trial court incorrectly denied his motions to compel and the motion to conduct discovery that he filed after UPA moved for summary judgment. "We generally review discovery orders for an abuse of discretion." *Cook v. Bradley*, 9th Dist. Lorain No. 15CA010726, 2015-Ohio-5039, ¶ 9.

{¶16} Regarding the subpoenas, Mr. Carter sought to compel discovery from a non-party accounting firm after it failed to respond to a subpoena. The trial court noted that, under Civil Rule 45(E), he should have filed a motion to show cause instead. The trial court declined to consider the motion, however, because Mr. Carter issued the subpoena in April 2016 and did not move to enforce it until February 2020.

{¶17} Mr. Carter argues that the reason he did not file his motion earlier is because the trial court had stayed discovery. He also argues that, under Rule 45(C), if the person who has been issued a subpoena objects, the party who served a subpoena "may move at any time for an order to compel the production." Civ.R. 45(C)(2)(b). Mr. Carter, however, did not allege in his motion and has not pointed to any evidence in the record establishing that the accounting firm objected to

the subpoena. Accordingly, the trial court did not err when it determined that Rule 45(E) applied instead of Rule 45(C). Mr. Carter has not developed an argument regarding Rule 45(E), and we decline to create one for him. *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶18} Regarding Mr. Carter's ability to conduct discovery, the trial court noted that Mr. Carter obtained over 100,000 pages of documents, issued multiple subpoenas and conducted seven depositions in his initial action. The court found that allowing further discovery would unduly burden the parties and so it closed discovery except as to expert witnesses or upon approval of the trial court after a showing of good cause.

{¶19} Although Mr. Carter argues that the discovery he obtained in the first action was inadequate in regard to this action, he has not identified any specific individuals whose depositions he was not allowed to take and he acknowledged to the trial court that he only sought supplemental answers to his interrogatories and request for production of documents. Upon review of the record, we conclude that Mr. Carter has not established that the trial court exercised improper discretion when it denied his discovery requests. Mr. Carter's third assignment of error is overruled.

ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED, TO THE PREJUDICE OF CARTER, WHEN IT DISMISSED COUNTS TWO, THREE, FOUR, FIVE (AGAINST THE INDIVIDUAL DEFENDANTS), AND SIX, EIGHT, NINE, AND TEN OF THE COMPLAINT AGAINST ALL DEFENDANTS WITHIN ITS ORDER OF MAY 18, 2018.

{¶20} In his fifth assignment of error, Mr. Carter argues that the trial court incorrectly dismissed many of his claims under Rule 12(B)(6). "We review de novo a motion to dismiss for failure to state a claim upon which relief can be granted." *Francis v. State, Lorain Cty. Prosecutor's Office*, 9th Dist. Lorain No. 16CA011041, 2017-Ohio-4209, ¶ 7. "Dismissal of a

claim is appropriate where, after accepting as true all factual allegations of the claim and resolving all reasonable inferences in favor of the nonmoving party, 'it appears beyond doubt that the nonmoving party cannot prove any set of facts entitling him to the requested relief.'" *Id.*, quoting *LaSalle Bank, N.A. v. Kelly*, 9th Dist. Medina No. 09CA0067-M, 2010-Ohio-2668, ¶ 19.

**{¶21}** Count two of Mr. Carter's complaint was for breach of fiduciary duties. The trial court dismissed the count as to UPA under the economic loss rule because the only damages Mr. Carter asserted were the same as his breach of contract claim. *Textron Fin Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151 (9th Dist.1996) ("A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed."). For the same reason, it dismissed count three of Mr. Carter's complaint, which was for negligent misrepresentation.

**{¶22}** Mr. Carter argues that his breach of fiduciary duties claim should have been able to proceed because a tort claim may proceed together with a breach of contract claim if the tort was committed separately. Even if he is correct, Mr. Carter has not developed an argument demonstrating that his breach of fiduciary duties claims occurred independently from his breach of contract claims. *Kiernan v. Ward*, 9th Dist. Summit No. 29994, 2022-Ohio-1303, ¶ 30.

**{¶23}** Mr. Carter argues that his negligent misrepresentation claim should not have been barred under the economic loss rule because the rule does not apply if the defendant possessed a pecuniary interest in the transaction, citing *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.*, 87 Ohio App.3d 613, 632 (8th Dist.1993). The misrepresentations he alleges occurred include the statement in the operating agreement that UPA had contributed $2,850,000

in capital contributions. He also alleges that UPA tax returns from 2013 and 2014 incorrectly represented the Village as a disregarded entity.

**{¶24}** The Ohio Supreme Court has adopted the elements of negligent misrepresentation from the Restatement of Torts 2d:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(Emphasis omitted.) *Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4 (1989), quoting 3 Restatement of the Law 2d, Torts, Section 552(a) (1965) 126-127. As has been explained previously, UPA did not misrepresent its capital contribution to the Village. Regarding UPA's tax returns, Mr. Carter did not include any mention of them in the negligent-misrepresentation part of his complaint, let alone allege that he justifiably relied on them to his pecuniary loss. Accordingly, Mr. Carter has not established that the dismissal of his breach of fiduciary duties or negligent misrepresentation claims was reversible error.

**{¶25}** Count four of Mr. Carter's complaint was for fraudulent inducement and common law fraud. The trial court dismissed the count because Mr. Carter did not plead his claims with particularity, failing to identify the date, time, or place where UPA or the individual defendants made false representations or what those statements were.

**{¶26}** Mr. Carter argues that the allegations in the complaint were sufficient to make out a claim of fraud. He argues that UPA, its officers, and its directors knew that UPA lacked the financial ability to provide its full capital contribution. He also argues that UPA had no intention of contributing any real estate it controlled. According to Mr. Carter, UPA contributed none of

the land to the Village, performed no construction, and only paid 2.9% of what it owed to the project.

{¶27} Rule 9(B) provides that "the circumstances constituting fraud or mistake shall be stated with particularity." "The circumstances constituting fraud, as that phrase is used in Rule 9(B), include the time, place, and content of the false representation; the fact misrepresented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud." *Wright v. Bank of New York*, 9th Dist. Summit No. 25842, 2012-Ohio-2289, ¶ 19, quoting *Hamblin v. Daugherty*, 9th Dist. Medina Nos. 06CA0109-M, 06CA0112-M, 2007-Ohio-5893, ¶ 20. "To have met the requirements of Civ.R. 9(B), the complaint * * * must have 'sufficiently apprised' the defendant 'of the specific claims to be required to answer.'" *L.E. Sommer Kidron, Inc. v. Kohler*, 9th Dist. Wayne No. 06CA0044, 2007-Ohio-885, ¶ 27, quoting *Haddon View Invest. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154, 159 (1982).

{¶28} In his complaint, Mr. Carter alleged that he relied on the representations of UPA, its officers, and its directors in executing the operating agreement and related contracts. He claimed that UPA made a material misrepresentation that it would make a $2,850,000 capital contribution to the Village, which he relied on. He also alleged that UPA officers intentionally misrepresented when the dwellings on his property would be demolished, causing him to evict his tenants months before the dwelling were actually demolished. Specifically, he alleged that UPA told him in December 2012 that the dwellings would be demolished by February 28, 2013.

{¶29} On appeal, Mr. Carter has not pursued his fraud allegations regarding the timing of the demolition of the dwellings, focusing only on UPA's contributions to the Village. His allegations regarding the demolition of the dwellings, however, was the only part of his fraud claim

that contained any particularity. Accordingly, upon review of the record, we cannot say that the trial court erred when it dismissed Mr. Carter's fraud claim.

{¶30} Count five of Mr. Carter's complaint was for breach of contract. The trial court dismissed it as to the individual defendants because they were not parties to any of the agreements and directors of UPA were not personally liable for the actions of the company. Mr. Carter argues that UPA's directors may be liable to him for UPA's improper actions, however, because they acted in the capacity of promoters, inducing him to transfer his property to the Village. He also argues that, because UPA did not make its full contribution, the formation of the Village was defective and so it does not shield individuals from liability.

{¶31} In his complaint, Mr. Carter only alleged that the Village and UPA had breached their contracts with him. He did not seek redress from any of the individual defendants in his claim. Accordingly, we conclude that the trial court did not err when it dismissed count five as to the individual defendants.

{¶32} Regarding count six, Mr. Carter includes it in his assignment of error as one of the claims that he alleges the trial court incorrectly dismissed. He has not developed an argument as to this count six, however, in his brief. We, therefore, will not address it. *State v. Rupert*, 9th Dist. Medina No. 21CA0032-M, 2022-Ohio-329, ¶ 9 (declining to address merits of assignment of error because appellant failed to properly develop an argument in support of her position).

{¶33} Count eight of Mr. Carter's complaint was for civil conspiracy. The trial court dismissed the count because all the other tort claims that could support a civil conspiracy claim had been dismissed. "In a claim for civil conspiracy, a claimant must prove '(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself.'" *Macken v. KDR*

*Holdings*, 9th Dist. Lorain No. 06CA009003, 2007-Ohio-4106, ¶ 24, quoting *Pappas v. United Parcel Service*, 9th Dist. Summit No. 20226, 2001 WL 358390, *5 (Apr. 11, 2001).

{¶34} Mr. Carter's argument to reverse the dismissal of count eight rests on his assertion that the trial court incorrectly dismissed his other claims. Because we have concluded that the trial court did not err when it dismissed Mr. Carter's other tort claims, we conclude that the court also did not err when it determined that Mr. Carter could not show the existence of an unlawful act independent from the conspiracy itself.

{¶35} Count nine of Mr. Carter's complaint was for alter ego. The trial court dismissed the claim because it determined that there is no independent cause of action for alter ego or piercing the corporate veil. In his appellate brief, Mr. Carter argues that the circumstances satisfy the three-pronged test that courts use when deciding whether to pierce the corporate veil. *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, ¶ 18, citing *Belvedere Condominium Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 288-289 (1993). He has not challenged the trial court's determination that "alter ego" is not an independent cause of action. Accordingly, we conclude that he has not established that the trial court incorrectly dismissed count nine.

{¶36} As discussed under Assignment of Error I, count ten of Mr. Carter's complaint was for statutory specific performance. In his brief, Mr. Carter again argues that the trial court incorrectly dismissed the count sua sponte. As previously noted, in its motion to dismiss, UPA argued that specific performance should be unavailable to Mr. Carter. The trial court, therefore, did not dismiss count ten sua sponte.

{¶37} Mr. Carter also argues that the trial court applied an incorrect standard when considering the motions to dismiss. In its journal entry, the trial court used language from *Vagas v. City of Hudson*, 9th Dist. Summit No. 24713, 2009-Ohio-6794, to explain the standard for a

motion to dismiss. The language it quoted included both the standard for granting a motion to dismiss under Rule 12(B)(6) and language regarding the requirements for a complaint under Rule 8(A). There is no indication that the trial court incorrectly applied the standard for Rule 8(A) when it determined whether to grant the motions to dismiss.

**{¶38}** Upon review of the record, we conclude that Mr. Carter has not established that the trial court incorrectly dismissed courts two, three, four, six, eight, nine, and ten against all the defendants, or count five against the individual defendants. Mr. Carter's fifth assignment of error is overruled.

ASSIGNMENT OF ERROR VI

> THE TRIAL COURT ERRED, TO THE PREJUDICE OF CARTER, BY DISMISSING COUNTS TWO, THREE, FOUR, FIVE, SEVEN AND EIGHT OF THE COMPLAINT REGARDING CLAIMS AGAINST UPV.

**{¶39}** In his sixth assignment of error, Mr. Carter argues that the trial court incorrectly granted summary judgment to the Village on counts seven and eight. He also argues that the court incorrectly granted judgment on the pleadings to the Village on counts two, three, and four. Although Mr. Carter has included count five in his assignment of error heading, he has not developed an argument as to that claim in his brief.

**{¶40}** Regarding counts seven and eight, under Rule 56(C), summary judgment is appropriate if:

> [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the party moving for summary judgment must first be able to point to evidentiary

materials that demonstrate there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 293, quoting Civ.R. 56(E). This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶41} Count seven of Mr. Carter's complaint was for unjust enrichment. "[U]njust enrichment of a person occurs when [it] has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel*, 133 Ohio St. 520, 528 (1938). To recover for unjust enrichment, a plaintiff must demonstrate: (1) that it conferred a benefit upon the defendant; (2) that the defendant knew of the benefit; and (3) that, under the circumstances, it would be unjust to allow the defendant to retain the benefit without payment. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984), citing *Hummel* at 525.

{¶42} The trial court granted summary judgment to the Village on the unjust enrichment count because there were written agreements regarding the parties' relationship and none of the parties had argued there were any additional agreements or quasi-contracts as to any subjects not covered by those written contracts. "This Court has held that quasi-contract claims such as promissory estoppel and unjust enrichment apply only 'in the absence of a contract[.]'" (Alteration in original.) *Spalsbury v. Gill Constr. Co., Inc.*, 9th Dist. Medina No. 17CA0030-M, 2018-Ohio-2616, ¶ 9, quoting *Glenmoore Builders, Inc. v. Smith Family Trust*, 9th Dist. Summit No. 24299, 2009-Ohio-3174, ¶ 42. "The reason for this rule is that if the parties have fixed their contractual relationship in an express contract, there is no reason or necessity for the law to supply an implied contractual relationship between them." *Id*., quoting *Champion Contracting Constr. Co. v. Valley City Post No. 5563*, 9th Dist. Medina No. 03CA0092-M, 2004-Ohio-3406, ¶ 25.

**{¶43}** Although Mr. Carter agrees with the principle that a plaintiff may not recover for both breach of an express contract and unjust enrichment, he argues that he should have been allowed to pursue his alternative theories of recovery all the way through trial, citing *Building Industry Consultants, Inc. v. 3M Parkway, Inc.*, 182 Ohio App.3d 39, 2009-Ohio-1910 (9th Dist.). *Id*. at ¶ 17 ("[A] party is not barred from seeking alternative theories and recovering under a quantum meruit theory if his contractual claim fails."). In that case, however, the parties did not have an express contract. *Id*. In this case, Mr. Carter has not challenged the existence of multiple written contracts or directed this Court to anything in the record suggesting that any of his or the Village's conduct was not covered by those agreements. The trial court, therefore, did not err when it granted summary judgment to the Village on Mr. Carter's unjust enrichment claim.

**{¶44}** As previously noted, count eight of Mr. Carter's complaint was for civil conspiracy. The trial court reasoned that, because all the tort claims that could support a civil conspiracy claim had been dismissed against UPA and the individual defendants, Mr. Carter could not establish a malicious combination involving two or more persons. *See Macken*, 2007-Ohio-4106, at ¶ 24. Mr. Carter's argument to this Court relies on his assertion in his previous assignment of error that the trial court incorrectly dismissed his tort claims as to UPA and the individual defendants. We have determined, however, that the trial court did not err when it dismissed those claims. Accordingly, we conclude that the trial court did not err when it granted summary judgment to the Village on Mr. Carter's civil conspiracy claim.

**{¶45}** Regarding counts two, three, and four, a motion for judgment on the pleadings is "akin to a delayed motion to dismiss for failure to state a claim." *Cashland Fin. Servs., Inc. v. Hoyt*, 9th Dist. Lorain No. 12CA010232, 2013-Ohio-3663, ¶ 7. "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all

reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). In deciding a motion for judgment on the pleadings, a trial court reviews only the "material allegations in the pleadings" and any attachments thereto. *Hoyt* at ¶ 7; *see Padula v. Wagner*, 9th Dist. Summit No. 27509, 2015-Ohio-2374, ¶ 13, quoting Civ.R. 10(C) ("A copy of any written instrument attached to a pleading is a part of the pleading for all purposes."). This Court reviews a trial court's ruling on a motion for judgment on the pleadings de novo. *Padula* at ¶ 12.

**{¶46}** As previously noted, counts two, three, and four of Mr. Carter's complaint were for breach of fiduciary duties, negligent misrepresentation, and fraud. The trial court denied the Village's motion for summary judgment as to those claims, but the Village moved for limited reconsideration of its motion for summary judgment or, in the alternative, judgment on the pleadings. The trial court granted judgment on the pleadings to the Village on count two because it determined that Mr. Carter did not identify any language that created a fiduciary relationship between the Village and Mr. Carter. It granted judgment on the pleadings to the Village on count three because Mr. Carter's claim for negligent misrepresentation could not survive if there was no fiduciary relationship between them. As with UPA, the court granted judgment on the pleadings to the Village on count four because Mr. Carter had not pleaded fraud with enough particularity.

**{¶47}** Mr. Carter argues that the trial court incorrectly stated that his only argument in opposition to the motion for judgment on the pleadings was that the Village's motion was untimely. Mr. Carter's response was divided into three sections. The first addressed both the motion for reconsideration and motion for judgment on the pleadings and argued that they should be stricken as untimely. The second section only addressed the motion for reconsideration but did

argue the merits of whether the Village owed a fiduciary duty to him and whether the Village breached its duty. The third section was a conclusion that requested that the trial court deny the Village's motions. Accordingly, upon review of Mr. Carter's response to the Village's motion for judgment on the pleadings, this Court concludes that the trial court did not misstate Mr. Carter's argument against the motion.

{¶48} Mr. Carter also argues that the trial court should have considered the arguments he had made in his opposition to the Village's motion for summary judgment. He has not pointed out any specific arguments, however, that the trial court failed to consider when it reviewed the merits of the Village's motion. Accordingly, he has failed to establish any error by the trial court. Mr. Carter's sixth assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED ERROR, PREJUDICIAL TO CARTER, BY REFUSING TO PERMIT TESTIMONY AT TRIAL OF RUSSELL PHILLIPS.

{¶49} In his fourth assignment of error, Mr. Carter argues that the trial court incorrectly barred him from calling Russell Phillips, a certified public accountant, as well as prohibited the jury from considering Mr. Phillips's reports. UPA filed a motion in limine to preclude Mr. Phillips's testimony for several reasons. The trial court granted the motion because it determined that Mr. Phillips had based his calculation of damages off another expert witness's report. It also excluded him from testifying about UPA's accounting records because it would improperly raise issues of fraud when the trial was confined to Mr. Carter's breach of contract claim. "[D]ecisions granting or denying a motion in limine are reviewed under an abuse-of-discretion standard of review." *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, ¶ 22.

{¶50} Mr. Carter proffered that Mr. Phillips would have testified about lost rent Mr. Carter had suffered as well as the present value of that loss. Mr. Phillips also would have talked about

accounting standards and what information was required on certain tax forms. Mr. Carter proffered that Mr. Phillips also would have discussed whether UPA's conduct proximately caused his damages.

{¶51} The jury found that UPA committed a material breach of the contract. It also found, however, that Mr. Carter had prevented, interfered with, or hindered UPA's performance of its obligations. It, therefore, found in favor of UPA on the breach of contract claim. Mr. Phillips' report and the topics that Mr. Carter wanted him to testify about did not concern whether Mr. Carter prevented UPA from performing its contract obligations. Accordingly, Mr. Carter has not established that the exclusion of Mr. Phillips's testimony and report, if incorrect, affected his substantial rights. Civ.R. 61; *Jones v. Jones*, 4th Dist. Highland No. 20CA3, 2021-Ohio-1498, ¶ 51 ("An error affects a party's substantial rights when the error is prejudicial, i.e., the error affected the outcome of the proceeding."). Mr. Carter's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR VII

THE TRIAL COURT COMMITTED ERROR, PREJUDICIAL TO CARTER, BY PERMITTING THE JURY TO CONSIDER THE AFFIRMATIVE DEFENSE OF PREVENTION, INTERFERENCE OR HINDRANCE WITH UPA'S PERFORMANCE OF ITS CONTRACTUAL OBLIGATIONS.

{¶52} In his seventh assignment of error, Mr. Carter argues that the trial court improperly allowed the jury to consider the affirmative defense of prevention, interference, or hindrance with UPA's performance of its obligations. The doctrine of wrongful prevention of performance may be invoked to excuse the performance of a contractual obligation in a case where a party to the agreement has, in some manner, actively hindered or impeded the attainment of a material part of the bargain. *Wittrock v. Paragon Paper Co.*, 1st Dist. Hamilton No. C-840883, 1985 WL 4496, *4 (Dec. 18, 1985); *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, ¶

54. According to Mr. Carter, the issue in this case was a question of law for the court to determine and should not have gone to the jury.

{¶53} The Village's operating agreement provided that, if a certificate of occupancy was not issued within 18 months of the dwellings being demolished on the property Mr. Carter had contributed, he had the option to seek a project delay payment. In exchange for the payment, which was to be made within 30 days of the 18-month date, Mr. Carter was required to forfeit his interest in the Village and convey his right, title, and interest in it to UPA, including "the Cumulative Preferred Return, the Class B Non-Managing Member interest, and the Property contributed by the Non-Managing Member to the Company."

{¶54} Mr. Carter argues that, after he exercised his option for the project delay payment, UPA attempted to impose additional conditions on him that were not specified in the operating agreement. UPA then argued at trial that he prevented its payment by failing to adhere to these additional requirements. According to Mr. Carter, because of the extra conditions, UPA did not tender performance of the project delay payment. He argues that whether he was required to abide by the additional requirements was a matter of contract interpretation, which was for the trial court to determine. Mr. Carter also argues that he strictly followed the language of the operating agreement in seeking payment.

{¶55} Mr. Carter submitted notice of his intent to exercise the project delay payment option before the dwellings were even demolished. UPA's treasurer testified that he wrote Mr. Carter to explain that, in order to obtain funds for the payment, UPA had to sell certain parcels of property, which included the ones Mr. Carter had contributed. The letter also asked Mr. Carter to confirm that he wanted to withdraw from the Village. Mr. Carter responded by stating that the time for performance had long past and he refused to sign a confirmation of his withdrawal from

the company. The chair of UPA's board of trustees testified that there was a buyer interested in the properties UPA had arranged to sell, but UPA and the Village needed to provide clear title. At the time, Mr. Carter had already filed a lawsuit against UPA and the Village, which is why UPA asked Mr. Carter to confirm that he was electing to withdraw from the Village and would release his right, title, and interest in the properties. UPA notes that the operating agreement required Mr. Carter to "execute and deliver to each other such * * * documents and instruments as may be necessary to carry out the purposes of this Agreement * * *."

**{¶56}** UPA presented evidence that Mr. Carter failed to execute all the documents the Village needed to acquire funds to pay the project delay payment and that this prevented it from making that payment. *See Brownfield Restoration Group, LLC v. Trickett*, 11th Dist. Portage No. 2018-P-0025, 2018-Ohio-4473, ¶ 48 (concluding that party's refusal to supply a required document was sufficient to find he prevented performance of contract). Upon review of the record, we conclude that the trial court correctly determined that whether Mr. Carter's refusal constituted a breach of the contract was a question of fact for the jury to determine. Mr. Carter's seventh assignment of error is overruled.

III.

**{¶57}** Mr. Carter's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
SUTTON, J.
CONCUR.


APPEARANCES:

BRADLEY S. LE BOEUF, Attorney at Law, for Appellant.

SIDNEY N. FREEMAN, Attorney at Law, for Appellant.

OWEN J. RARRIC, KAREN SOEHNLEN MCQUEEN, and MARCUS L. WAINWRIGHT, Attorneys at Law, for Appellees.

PHILIP F. DOWNEY and ANDREW P. GURAN, Attorneys at Law, for Appellee.